PITTSBURGH, CINCINNATI AND ST. LOUIS RAILWAY COMPANY

*v.*

STEPHEN DEWIN.

1. EXCESSIVE DAMAGES — *ejecting passenger from train.* In a suit against a railroad company for expelling the plaintiff from its car, where there is nothing to authorize the recovery of vindictive damages, and no actual damage is shown, a judgment for $750 will not be sustained.

2. EXEMPLARY DAMAGES — *whether recoverable.* In a suit by a child twenty-seven months old against a railroad company for expelling him from its train, the fact that the conductor may have used improper language to the mother of such child at the time of the expulsion will not authorize the finding of exemplary damages.

APPEAL from the Circuit Court of Cook County; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. E. Walker, for the appellant.

Messrs. O'Brien & Kettelle, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action brought in the name of Stephen
Dewin, a child twenty-seven months old, by James Dewin,
his next friend, against the Pittsburgh, Cincinnati and St.
Louis Railway Company, to recover damages for being ex-
pelled from one of the passenger trains of the company at
Washington, Indiana, on February 11, 1875.

The company was operating a road from Chicago to Rich-
mond, Indiana. At the latter place James Dewin, his wife,
and six children came upon the train, on their way to Chi-
cago. The oldest child was fifteen years of age; the sec-
ond one, ten; the third one, eight; the fourth, six; the
fifth, plaintiff, twenty-seven months; and the youngest,
eight or nine months. James Dewin, the father of the
plaintiff, had tickets from Richmond to Chicago for two
persons only, and when the conductor on the train called on
him for fare for himself and family, the two tickets were
offered for the transportation of the whole family. This
the conductor refused. He made no charge for the three
younger children, and offered to take the older three at
half fare, which was more liberal than the rules of the com-
pany under which he was acting allowed, as the rules in
evidence only provided that children between the ages of
five and twelve years could travel on half-fare tickets.
James Dewin and his wife refused to pay anything on ac-
count of the children, and insisted that all the family should
be carried on the two tickets. The conductor replied,
" You will either have to pay for these children or they will
get off." The fares not having been paid, when the train
reached the next station the whole family left the train.
They remained overnight at Washington, and the day fol-
lowing were carried to Chicago on the next train without
the payment of additional fare, having been delayed on the
road about twelve hours.

298      P., C. & St. L. Ry. Co. *v.* Dewin.     [Sept. T.

Opinion of the Court.

The statute of Indiana, where these parties were expelled from the train, provides, if any passenger shall refuse to pay his fare or toll, the conductor of the train and the servants of the corporation may put him off the cars at any usual stopping place. The conductor had no right to expel Dewin and his wife and the children under five years of age, as he had tickets for two fares, if they desired to remain on the train and travel on the tickets, nor did he propose to expel them. He demanded fares for the three elder children, and Dewin and his wife preferred to leave the train with the children for whom they had no tickets, rather than have them put off or pay. This is evident from the evidence of Dewin himself, who, on cross-examination, said : " I was not willing to have a part of the family put off, and the balance come to Chicago. Any one that states that, states a lie." It is apparent from the whole evidence that Dewin and his wife insisted on being carried to Chicago with the six children on tickets for but two persons. When this was refused, rather than have a portion of the family put off, they all left the train together.

There can be no doubt in regard to the right of the conductor to expel from the train such of the Dewin children over five years of age as failed to pay fare. The right was expressly given by the statute; but independent of the statute he had the right to do it. A person can not ride on a train of a railroad company without the consent of the company, without the payment of fare ; and when Dewin and his wife undertook to travel on the road with six children on two fares only, the company was under no obligation to accede to their request, but had a clear right to demand fare, and, on failure to pay the same, cause such as did not pay, or have tickets, to leave the train, using such force as was necessary for that purpose.

If, then, the conductor had the right to expel the Dewins from the train for the refusal to pay fare, the only remaining inquiry is whether unnecessary force was employed. It is not pretended that any personal violence was resorted to by the conductor or those in charge of the train, but it is

insisted the act of the conductor in ejecting appellee from the train, under the circumstances and at the time and place, was malicious, willful, and reckless.   The evidence discloses that appellee was put off at a regular station, between ten and eleven o'clock in the evening.   It was in the winter season, but not excessively cold or stormy.   They reached the house of Mr. Snyder, where they staid overnight, within fifteen minutes after the train left, as he testified, and he did not observe that they had suffered in the least from the inclemency of the weather.   It is true, that loud words were used between Mrs. Dewin and the conductor shortly before and at the time she left the train, but that the conductor used indecent or abusive language to any of the parties is not disclosed by a fair construction of the testimony.   But even if the conductor had indulged in the use of language not appropriate to the occasion, in his conversation with Mrs. Dewin, that of itself would be no ground for the recovery of a judgment for $750 in favor of the infant plaintiff in this action.   How or in what manner he was injured by the conversation does not appear.   No insult or indignity was offered him, nor did he in any manner participate in the controversy between the conductor and his mother.

So far as this record discloses, the conductor did no more than his duty.   He could not, without a disregard of the rules of the company, carry Dewin, his wife, and six children on a ticket for two fares.   They were given the alternative to pay or leave the train at a regular station.   They chose the latter course, and under the order of the conductor left the train.   No evil motive seemed to actuate the conductor, nor were there any circumstances of aggravation. There was, therefore, no ground for the recovery of vindictive damages, and, as no actual damages were proven, we perceive no ground upon which the judgment can be sustained, and it will be reversed.

*Judgment reversed.*