THE GEORGIA RAILROAD *vs.* HOMER, and *vice versa.*

| 73 | 251 |
|----|-----|
| 86 | 644 |
| 88 | 775 |
| 73 | 251 |
| 91 | 820 |
| 73 | 251 |
| 92 | 459 |
| 93 | 461 |
| 73 | 251 |
| 94 | 86 |
| 73 | 251 |
| 105 | 317 |
| 73 | 251 |
| 116 | 783 |
| 73 | 251 |
| 124 | 359 |

1. Except in cases where the entire injury is to the peace, happiness or feelings of the plaintiff, worldly circumstances should not be admitted or weighed in the ascertainment of damages.
2. Where a passenger on a railroad train, who had delivered his ticket to the conductor, was subsequently ejected by the latter, who took him by the arm, led him to the platform, and he thereupon got off, although this was done kindly, and he did not resist so as to require violence, yet the jury might find exemplary damages. The inconvenience, insult in the presence of fellow passengers and wounded feelings of the person ejected could be considered by the jury.
3. Extraordinary diligence is the measure of care which conductors must exercise toward passengers.
4. There was no error in ruling out what plaintiff said as to another person's conduct in correcting a mistake as to that person's ticket, or the price of it, it not being said in the presence of the conductor or communicated to him, but being said at or near the ticket office, before the plaintiff entered the car.
(a.) There was no error in the court's stating to the jury that no power on earth could set aside their verdict, if made under the circumstances stated, which meant what the law and facts authorized.
5. Larceny is a *crimen falsi,* and the record of a conviction for larceny is admissible to discredit a witness.
6. In case of the ejection from a railroad train of a passenger who

had previously delivered up his ticket, and who sues for damages on account of such ejection, the presumption is against the company; and it devolves on it to show that the conductor, who put the passenger off, acted rightly and under authority of law, and thus to lift the burden cast upon it by law.

7. The illegal ejection of a passenger entitled by contract to be carried over a railway is itself an act for which damages are recoverable. The measure is for the jury.

8. While the good faith of a conductor, who improperly ejected a passenger, would not defeat the right to recover damages therefor, yet it might be considered in fixing the amount of such damages; and bad faith on the part of the conductor might be considered to increase the damages.

February 7, 1885.

Railroads. Damages. Negligence. Witness. Evidence. Larceny. Diligence. Presumptions. Before Judge HAMMOND. DeKalb Superior Court. March Term, 1884.

Homer brought suit against the Georgia Railroad, alleging that he had been wrongfully ejected from defendant's train after having purchased and delivered to the conductor a ticket to his destination; that he was put out in an old field, away from a crossing, and in the rain. He laid his damages at $3,000.00.

On the trial, the evidence for the plaintiff was, in brief, as follows: Plaintiff lived at Stone Mountain, but worked at Lithonia, a station further down the road than his starting point, which was Decatur. He purchased a ticket from Decatur to Lithonia and delivered it to the conductor, on demand, before reaching Stone Mountain. After passing that point, the conductor again called for his ticket. He replied that he had given up his ticket. The conductor denied this, said plaintiff had just got on the train and was trying to beat his way, and stopped the train, caught plaintiff by the arm and put him off. It was about seven o'clock in the evening, and was dark and raining. It was from thirty-five to fifty yards from where a small road crossed the railroad. Plaintiff went to a house about one

hundred yards distant, where he had formerly boarded, and stayed all night without cost. He had been attending court in Decatur as a witness, and had gone thither by private conveyance.

The evidence for the defendant was, in brief, as follows: Plaintiff and several others purchased tickets at Decatur to Stone Mountain. Two of them expressed an intention of " beating " their way to their places of destination below that point, and plaintiff said he intended to " beat " his way to Lithonia. After passing Stone Mountain, the conductor called for his ticket to Lithonia. He claimed to have already given it up. The conductor denied this, and told him he must pay or get off. Plaintiff felt in his pockets, and said he had no money. The conductor rang the bell, stopped the train and accompanied plaintiff to the steps of the car with his lantern. After the plaintiff was off, the conductor asked if he was all right, and receiving an affirmative answer, the train proceeded. There was only one other passenger in the car at the time. The conductor did not put his hand on the plaintiff; he would have called for assistance if it had been necessary, but it was not. He testified that he did not see plaintiff until after the train left Stone Mountain. Plaintiff explained that some water on his hat had got there from his having put his head out of the window into the rain.

The record of a conviction of the plaintiff, on plea of guilty by him, for larceny from the house, was put in evidence. It was dated about four years before the trial, and was from another county.

The jury found for the plaintiff $300.00. Defendant moved for a new trial, on many grounds, but the following will show the points decided by the court:

(1.) Because the verdict was contrary to law and evidence, and the damages were excessive.

(2.) Because the court admitted, over objection, evidence to show that the defendant was worth about $5,000,-000.00 above its indebtedness.

(3.) Because the court refused to charge, in effect, that, although the conductor may have been mistaken about having taken the ticket of plaintiff, yet if he acted in good faith and without violence or insult, only actual or nominal damages could be recovered ; but charged as follows : " The question of the conductor's good faith and belief\ would not affect the plaintiff's right to recover, but might affect the amount of damages that the plaintiff would be entitled to recover, as the court will explain to you."

(4.) Because the court refused to charge as follows : " While plaintiff was not obliged to resist forcibly any force used to expel him in order to have a claim against the defendant for damages, yet, before he can claim to have been ejected from the train, there must appear to have been some compulsion greater than words ; there must have been some force, however slight, or some display of sufficient force. Obedience by plaintiff to a mere unlawful order of the conductor would not sustain an action for forcible expulsion, so- as to allow exemplary damages or any more than actual damages or nominal damages."

(5.) Because the court refused to charge as follows : " The conductor would be bound not to extraordinary, but to only ordinary diligence in keeping and remembering about the identity of passengers and tickets, just like other persons conducting business with each other; that is, in the light of reason and according to the nature and circumstances of the business in hand." [The court charged, in substance, that the rule of extraordinary diligence would apply.]

(6.) Because the court charged as follows : " When you have done that (*i. e.*, determined whether there was any injury and what would compensate for wounded feelings or injury to peace and happiness), and your verdict is free from any bias, prejudice or feeling for or against the parties, there is no power on earth that can set it aside; you

alone are the judges of what is fair and right in such case."

(7.) Because the court rejected the following testimony of a witness for the defendant: " As we went from the ticket office to the car, Homer said to me, that he would not have said anything about the mistake in making the change if he had been me." [The witness had testified that he purchased his ticket at the same time as did the plaintiff; that the agent made a mistake in giving him change; and that he called attention to it, and it was corrected.]

The motion was overruled, and defendant excepted. Plaintiff filed a cross-bill of exceptions, alleging the following errors:

(1.) Because the court admitted in evidence the record of the conviction of plaintiff for larceny from the house.—The objection was that it was irrelevant.

(2.) Because the court refused to charge as follows: " If you believe from the evidence that the plaintiff was illegally ejected from the defendant's train, the [law] presumes that it was in consequence of the [want of] use of the diligence required by law of the defendant, its agents and employe's, in the transportation of passengers; and it would be incumbent on the defendant, by proof, to show that they had used that degree of diligence required of them by law, to-wit, extraordinary diligence."

And because the court charged as follows: " If it (the testimony) be equally balanced, then the plaintiff's case fails, and he could not recover," and added, after charging that, in case of injury by the running of trains, the presumption of law is against the company, these words: " But not so in a case like the one you are trying, where the alleged injury is for a refusal to perform a contract to carry a passenger, as is alleged here, and the burden of proof is not on the railroad company, but is on the plaintiff."

(3.) Because the court refused to charge as follows: " If the evidence shows that the plaintiff was illegally

ejected from the cars of the defendant, the law presumes he was damaged."

(4.) Because the court charged as follows: "If you find from the evidence that the conductor did expel the plaintiff from the train, but that he acted in perfect good faith, that is, that he really and truly believed plaintiff had not paid his fare or delivered up his ticket to a point beyond where he was expelled, then you would consider that, in making up your minds as to the amount of damages plaintiff is entitled to."

L. J. WINN, for plaintiff.

J. B. CUMMING; HILLYER & BRO.; CANDLER, THOMSON & CANDLER, for defendant.

JACKSON, Chief Justice.

This is an action for the recovery of damages brought by Charles Homer against the Georgia Railroad and Banking Company for ejecting the plaintiff from the cars between Decatur and Lithonia, though he had given to the defendant's conductor a ticket purchased at Decatur through to Lithonia. The jury found for the plaintiff three hundred dollars, and the railroad company being denied a new trial, excepted; and Homer also excepted, and assigned errors in a cross-bill of exceptions.

1. There is one error assigned in the bill of exceptions brought by the company, which, in our judgment, demands a new trial, under the ruling in *Higgins vs. The Cherokee Railroad Company*, decided during the present term. That is the admission of the testimony in regard to the immense wealth of the Georgia Railroad & Banking Company. We think that juries are disposed enough ordinarily to find against railroad corporations, without helping them to do so, and to increase the damages because they are so enormously rich, and in order to multiply the damage to admit testimony detailing that wealth. Except in cases

where the entire injury is to the peace, happiness or feelings of the plaintiff, where, under section 3067 of our Code, the worldly circumstances of the parties are admissible to be weighed by the jury, as was the common law, we think worldly circumstances should not be weighed or admitted to be weighed. What effect this evidence may have had in contributing to the amount of the verdict we cannot tell. We do not say that it is or that it is not excessive, but we simply rule that it should not be increased, as it might have been, by illegal testimony tending to induce the jury to increase the damage.

2. We see no error in the charge that exemplary damages might be recovered with or without actual force in a case like this. The conductor took the passenger by the arm and led him to the platform, and he got off. All was done kindly, but by the commanding authority of the conductor. The passenger lost nothing by not resisting and requiring force to eject him. On the contrary, he was right to yield to authority and throw himself for remuneration upon the law. Of course, rude and violent conduct would be a circumstance to demand increase of damages against the company, but more than actual damage is recoverable for the act of putting off, by the mere moral force of authority, a passenger who had a ticket and was entitled to ride to Lithonia, before he got there. The inconvenience, the insult in the presence of fellow passengers and the wounded feelings of the passenger, may be considered and weighed. Code, §3066. The act, without considering the intention, may be aggravating; and certainly it is very aggravating, where one has bought a right to be transported to Lithonia, for him to be ejected in a field where there was no depot, or cross-road even, before he reached his destination. Code, §3066, supra.

3. Extraordinary diligence is the measure of care which conductors must exercise towards passengers, and there is no error in so charging the jury. It has been expressly so ruled by this court, and other authority is unnecessary to

be invoked. Code, §§2067, 2083; 34 *Ga.*, 330; 58 *Id.*, 461, and following cases.

4. There was no error in ruling out what plaintiff's saying was as to another person's conduct in correcting a mistake as to that person's ticket or the price of it, it not being said in presence of the conductor or communicated to him, but at the Decatur ticket office, or near it, before entering the car. It was no part of the *res gestæ*, or otherwise admissible. Nor can we see error in the court stating to the jury that no power on earth could set aside its verdict, if made under the circumstances stated, which meant simply what the law and facts authorized.

5. In respect to the cross-bill of exceptions, we think that the court properly admitted the record of the plaintiff's conviction of larceny from Hall county. It is a conviction of a " *crimen falsi*," and evidence tending to discredit the plaintiff's testimony.

6. In this, as in all such cases, the presumption is against the agent of the railroad company, and it devolves on the company to show that the conductor acted rightly and under authority of law, and thus to lift the burden cast upon it by the law.

7. The illegal ejection of a passenger entitled by contract to be carried over a railway is itself an act for which damage is recoverable. The measure is for the jury.

8. On the point of good faith in the conductor, we think that, whilst it does not in law defeat the right to recover damage, yet it may be considered in making up the amount thereof. Just as the company would be responsible for his intention to do wrong, which is bad faith, and the damages be therefore increased under section 3066 of our Code, so it ought to receive credit for his good intention, and the damage should not be so high where its agent acted *bona fide*.

This covers all the points made in both bills of exception. The judgment is reversed, and a new trial awarded, on the ground of error in admitting evidence of the wealth

of the plaintiff in error, the costs of the original bill of exceptions to be paid by the defendant in error to that writ of error, and of the cross-bill by the defendant in error to that writ of error.

Judgment reversed.