THE GEORGIA RAILROAD & BANKING COMPANY *v.* ESKEW.

1. There was evidence from which the jury could infer that the
plaintiff was wrongfully expelled from the train and thereby denied
the enjoyment of his legal rights as a passenger.  It is no excuse
for expulsion that the conductor made a negligent mistake as to
the station indicated on the face of the ticket which the plaintiff
had exhibited and surrendered to the same conductor.

(*a*) A passenger need not wait to be forcibly ejected.  If before or
after the train reaches a certain station he is ordered by the con-
ductor to get off at that station, the order seeming to be peremp-
tory and the passenger so understanding it, he may yield to the
conductor's authority and leave the train at the station indicated,.
though the conductor be not immediately present when this is
done.  In such case if the passenger acts contrary to his own will
and in obedience to the conductor's command, he is coerced and
is entitled to redress for his expulsion.

2. Where punitive as well as compensatory damages are in question,.
the intention involved in the alleged tort is material.   Whether
the conductor intended to expel the plaintiff or was misunderstood
as to his purpose was relevant evidence on the claim for punitive
damages.  The conductor was competent to testify as to what his
intention really was.

3. In arriving at the conductor's intention the jury could consider
that he remained silent on hearing the plaintiff remark, after he
alighted from the train, "that it was hard to be put off and be com-
pelled to pay one's fare."

4. The cause of action being traceable to a mistake of the conductor
and not to his wilful or intentional violation of the plaintiff's
rights, a verdict for $750.00 damages has the appearance of being
excessive under all the facts and circumstances in evidence.

5-6. A person upon whom a wrong has been committed is under ob-
ligation to lighten the consequential damages as much as he can
by the use of ordinary care and diligence.  This applies, in case
of an expelled passenger, to the time and mode of traveling from

v 86-41

the place of his expulsion to the station at which he was entitled to be set down. It applies also to fatigue, hardship, and injury to his health involved in reaching there. Though he could not be compelled to pay fare to avoid wrongful expulsion, after being expelled he could not recover damages for walking and its consequences when he might have reached the station more cheaply and expeditiously and with less injury to his health by riding on the same or a subsequent train, or by securing other conveyance. Nor, as a general rule, could he recover for inconvenience, hardship or injury to health originating after reaching the station to which he was entitled to be carried, or needlessly caused by walking and exposure before reaching there.

7-8. Compensation for wounded feelings, as well as punitive damages, should be adjusted to all the circumstances of the actual case.

February 23, 1891. By two Justices.

Negligence. Railroads. Passengers. Damages. Evidence. Before Judge HINES. Rockdale superior court. August adjourned term, 1889.

Reported in the decision.

J. B. CUMMING and A. C. McCALLA, for plaintiff in error.

H. T. LEWIS and G. W. GLEATON, *contra.*

BLECKLEY, Chief Justice.

The learned counsel for the railroad company argued only four of the grounds of the motion for a new trial. To these our opinion will be confined.

1. That the evidence, construing it as we are bound to do, most favorably for the prevailing party, warranted a verdict for some amount against the company, we have no doubt. The tickets surrendered to the conductor by the plaintiff and his brother were from Atlanta to Social Circle; and that the conductor could and would have known this, had he exercised due care in the transaction of his business, admits of no question. If by reason of his own negligent mistake he expelled the plaintiff at Conyers, an intermediate station, when the plaintiff was rightfully on the train and entitled to be carried to his destination at Social Circle, the expul-

sion was wrongful and a breach of the legal duty of the company as a common carrier. A passenger who has .paid for and supplied himself with a ticket in all respects valid and regular, boarded the proper train, conducted himself thereon in a proper manner, and surrendered the ticket to the company at its own request, cannot be required either to produce the ticket when again called upon for it, or to pay fare as a condition of remaining upon the train and being carried to the point indicated upon the ticket as the *terminus* of his route. He has no further concern with the ticket, and can lose none of his rights by any mistake made by the conductor in reading it, construing it, mingling it with other tickets or disposing of it otherwise.

(a) Although the conductor neither used physical force to expel the plaintiff from the train nor was immediately present when the plaintiff left the train at Conyers, yet it was in fact an expulsion if the plaintiff alighted against his own will and as an act of obedience to the conductor's previous command. Nor does it matter whether the command was given shortly before the train arrived at Conyers, or after its arrival, provided it was or seemed to be peremptory and the plaintiff so understood and treated it. There was evidence from which the jury could infer that the command appeared peremptory, and that the plaintiff yielded to it in good faith. Whilst a passenger cannot avail himself of a formal order of the conductor, not meant to be absolute and final, as a pretext for leaving the train and grounding an action against the company for expulsion, yet, where the circumstances fairly warrant him in believing that the conductor means what he says, and he really does believe it, he need not wait for the employment or actual force against him, but may submit to the moral coercion of the conductor's authority, and may abandon the train as an expelled passenger. If conductors do

not mean that passengers shall withdraw themselves from trains, they should not issue their commands prematurely. All passenger conductors are by statute invested with the powers of police officers while on duty upon their trains. Code, §4586(a). A passenger, whether right or wrong in any contention or misunderstanding with a conductor, is under no duty, legal or moral, to stand out until the conductor appeals to force for the execution of his commands. If the passenger obeys and thereby does an act to which his own will does not consent, he is coerced. *Georgia Railroad* v. *Homer*, 73 *Ga.* 251. So far from being under a duty to resist, he would generally put himself in the wrong by offering resistance. For the sake of peace and good order he ought to submit.

2. Section 3066 of the code reads thus: "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." This section was applicable to the case as made by the evidence of the plaintiff below, and was properly given in charge to the jury. *Georgia Railroad* v. *Homer*, 73 *Ga.* 252; *Georgia Railroad* v. *Olds*, 77 *Ga.* 674. For this reason the intention of the conductor was for investigation and determination by the jury as an element affecting punitive damages. *Georgia Railroad* v. *Homer, supra*. If the purpose of the conductor was misunderstood, and he really had no intention of expelling the plaintiff from the train, although he had used language calculated to produce that impression, there was no aggravating circumstances taking its character from intention, and therefore no aggravating circumstance at all, unless found in the act itself considered apart from intention and viewed in the light of the time, place and

manner of its commission. From the general tenor of the conductor's evidence, it is highly probable he would have testified, had he been allowed to do so, that he had no intention to expel the plaintiff at Conyers. We think the court erred in refusing to allow counsel for the company to ask the conductor "whether or not it was his purpose to eject plaintiff from the train." As bearing upon the question of punitive damages, this was a legitimate inquiry; and there can be no doubt that the conductor was a competent witness to prove what his intention really was. There were divers circumstances in evidence tending to show that he intended expulsion. His answer on oath that he did not would have been direct evidence to the contrary of what the circumstances as indirect evidence tended to establish. In deciding upon the question of intention, the jury should have had before them both the direct evidence excluded and the indirect which was admitted. The company could not escape being affected by the conductor's intention, and this being so, it should have been allowed to show what that intention was. If the plaintiff had afterwards waived any claim for punitive damages, this error of the court would have been immaterial; but as there was no such waiver, and as the amount of damages awarded by the jury was very large for such a case, we think the company is entitled to a new trial on this ground.

3. There was no error in charging the jury as set out in the 13th ground of the motion for a new trial, that in determining whether the conductor intended to eject the plaintiff, the jury could take into consideration the remark made by the plaintiff after he alighted from the train but in the presence and hearing of the conductor, "that it was hard to be put off and be compelled to pay one's fare," and the failure of the conductor to make any reply to it. The conductor ad-

mitted in his evidence that he heard the observation and made no reply. He does not explain why he made none. If he had been misunderstood he could easily have said so to the plaintiff in answer to the remark above quoted, and the jury might think it a legitimate inference from his silence that he was not misunderstood. True, the whole scene bears a different construction, but what it really meant was for the jury; and the court merely submitted it for their consideration. This was correct. But that it was correct makes it more clear that the court erred, as we have ruled under the preceding head, in not allowing the conductor to testify with reference to his intention; for if his silence at the time of the transaction would throw light upon it, why would not his direct statement under oath at the trial be receivable to show what it really was? The charge, it will be noticed, relates to *actual* intention, the kind of intention which might aggravate the tort and serve as a basis for punitive damages. To allow compensatory damages, it would not be necessary for the jury to find actual intention; it would be enough for them to find apparent intention, that is, such manifestation of intention by the conductor as would justify the plaintiff in believing that he had made up his mind to expel the plaintiff, although he had no such purpose and was in fact misunderstood.

4. As a new trial is to be had, it is not absolutely necessary for us to decide whether the damages, assessed at $750, were excessive or not. We are strongly inclined to the opinion that the amount is out of reasonable and conscientious proportion with the magnitude of the injury. Numerous instances tending to illustrate the question of excessive damages by actual cases, are collated in 5 Am. & Eng. Enc. L., p. 55 *et seq.*, but at last each case must be ruled chiefly on its own facts and special circumstances. In the present case there is no

indication in the evidence, taking it all together, that there was any wilful or intentional violation of the plaintiff's rights on the part of the conductor. No doubt he was in error and that he fell into error on account of his own negligence. It was his duty to know that the tickets which he took up from the plaintiff and his brother were for Social Circle, and his failure to know it and have the means of verification afterwards is without any reasonable excuse that we can discover in the record. Between the conductor and these two passengers there were probably three misunderstandings. He thought either that they got on the train at Stone Mountain, or with tickets for that point and no further; they knew that they got on at Atlanta with tickets for Social Circle. He thought they claimed to have had and surrendered tickets for Greenesboro; they were sure they did not tell him they had tickets for that station. He thought he had not ordered them in a final and peremptory way to leave the train at Conyers; they construed his language as requiring them to do so. Without imputing perjury to any witness, the fact that two if not all three of these misunderstandings existed can be arrived at with a fair degree of certainty. Throwing all the blame on the conductor and allowing the jury the fullest scope in the exercise of their discretion which the law recognizes, what are the elements of damage? They are, first, compensation for pecuniary loss, for necessary inconvenience and physical hardship, and for proximate injury to health; second, compensation for wounded feelings; third, punitive damages.

5. The direct pecuniary loss was the cost of going to Social Circle from Conyers by the first available and appropriate conveyance, together with the expense and loss of time incident to waiting for and procuring such conveyance. A person upon whom a wrong has been

committed is under obligation to lighten the damages as much as he can by the use of ordinary care and diligence. To the extent in which his damages are increased by his failure to observe such care and diligence, they are the result of his own negligence. Field Dam. §126 *et seq.;* 1 Sedg. Meas. Dam. 164 *et seq.;* Weeks *Dam. Ab. Inj.* §121; 1 Suth. Dam. 148. In such a case as this, where the only fault or mistake involved in the cause of expulsion was on the part of the conductor, it was not the duty of the passenger to pay fare to prevent expulsion. He was under no obligation, legal or moral, to purchase exemption from a threatened or impending tort, but could stand upon his legal rights or waive them according to his election. He could not be made a trespasser where he had a legal right to be and remain, unless he waived that right, and he could not be forced by the conductor or any other human power to waive it. He had purchased it with his money, it was a vested right, and not even the legislative power of the State could deprive him of it, or force him to yield it against his will. And to expel him from the train when he was not a trespasser nor otherwise at fault, was to commit upon him a tortious injury. To eject as a trespasser one who is not an intruder, is not to make him a trespasser but to become one yourself. Bishop Non-Contract Law, 1096.

But as soon as the act of expulsion was complete, the plaintiff became subject to the rule of diligence to which we have just referred. The expulsion was not at night but in the afternoon. It affirmatively appears that he had money enough to procure transportation by the same train from Conyers to Social Circle, the distance being twenty-one miles. Perhaps he might be excused for not taking passage on that train, but after spending the night at Covington, he still had money enough, and more than enough, to pay his way and

that of his brother to the point to which the company
ought to have carried them in the first instance, it be-
ing only eleven miles. It thus appears that the plain-
tiff was not obliged to walk in order to reach Social
Circle, and if he did so at a greater cost of money and
time than he need to have expended in waiting for a
train and going by railway, he was not without fault.
His recovery on this item should be limited to what it
would have cost him in money and time to reach So-
cial Circle from Conyers by the cheapest appropriate
means which he could have used in the exercise of or-
dinary diligence, unless he suffered further direct dam-
age from detention or delay. For his time and expenses
in continuing his journey beyond Social Circle, no re-
covery can be had, for the reason that they are too re-
mote. After reaching the destination to which the
company was bound to convey him, his cause of action
against the company, both as to time and money, was
complete, and his recovery now should be the same as
if the action had been commenced at that moment. If
his damages were still accruing as he travelled on down
the railroad upon foot one mile beyond Social Circle,
and continued to accrue through the day's journey until
he arrived at Madison, and still continued after he left
the railroad at Madison and went through the country
to where he lodged for the night, and then ran on till
he reached his mother's house next day, we see not
what would have stopped them had his final destina-
tion been New York or Boston, and he had gone there
on foot before ceasing to run up the damages. Whether
a common carrier shall pay more or less damages for
failing to carry a passenger to a way station on its line,
cannot depend as a general rule on what occurs to the
passenger after he passes that station. If the company
makes him whole for what he has lost by delay and
otherwise up to the time of reaching there, this is

enough.   Subsequent losses are amongst the contingencies of life, which each man must bear for himself.

6. As to inconvenience and physical hardship, compensation for these should be denied altogether if they were needlessly incurred; and they were needlessly incurred, in part at least, if the plaintiff and his brother could have reached Social Circle by waiting at Conyers or Covington for the next train, or if, with the means at their command, they could have procured conveyance and spared themselves the fatigue and exposure of proceeding on foot to Social Circle.   Morse v. Duncan, 14 Fed. Rep. 396, 8 Am. & Eng. R. R. Cases, 374; C. R. I. & P. R'y v. Brisbane, 24 Mo. Ap. 467.   By walking voluntarily they could not entitle themselves to recover of the company more than it would have cost them to ride.   And the same may be said as to the alleged injury to the plaintiff's health.   If his health would not have suffered had he not walked, and if he was not obliged to walk in order to reach Social Circle, but chose to do so rather than spend his money, he can recover nothing for injury to his health.   I. B. & W. R'y v. Birney, 71 Ill. 391; Francis v. St. Louis Co., 5 Mo. Ap. 7; C. R. I & P. R'y v. Brisbane, supra; Railroad Co. v. Fleming, 14 Lea, 154.   The line of distinction between these cases and such as Int. G. N. R'y v. Terry, 62 Tex. 380, 50 Am. Rep. 529, and Spicer v. L. & B. Railroad, 149 Mass. 207, is very broad.   With inconvenience, hardship, or hurt to his health, originating after the plaintiff left Social Circle, no matter what method of travel he adopted, the company would have no concern.   Such remote incidents of his expulsion from the train at Conyers, in violation of a duty to convey him to Social Circle but no further, would be too contingent to enter into the computation of his damages.   Code, §§3071–3.

7. Compensation for wounded feelings and to redress

any indignity offered the plaintiff whilst upon the train as a passenger, is for estimation by the jury; but not only the literal facts in evidence, but their actual effect on the emotions should be regarded. What degree of mortification or humiliation was consciously experienced by the plaintiff? Was he cast down and made ashamed? What is the explanation of his not being silent on the subject after leaving the train, instead of calling attention to his grievance by a random remark in the hearing of the conductor and others who might chance to be within the sound of his voice? These are questions to be considered.

8. Punitive damages may be awarded in such a case if the jury think proper to allow them, but should be graduated with reference to the special circumstances. Amongst these circumstances is the singular fact that before leaving the train, the plaintiff did not protest or remonstrate with the conductor against being denied his rights as a passenger. He made no distinct objection to leaving the train. Indeed, he must have seemed to the conductor to leave it hurriedly and almost willingly; and the remark that it was hard to be put off and be compelled to pay one's fare, could well have been understood as a speech to cover retreat with a thin drapery of plaintive words after an unsuccessful attempt to *beat* the railroad out of a ride on imaginary tickets. This construction would have been unjust but might have been adopted by the conductor without any intention to do injustice. We have studied the evidence carefully, and it suggests as a probable theory that, after the misunderstanding arose between the passenger and the conductor, the passenger was not as helpful as he might have been in freeing the conductor from his mistake, and that he was less intent upon reaching Social Circle by that train than upon having a good case against the company. If this is a true

theory, it ought to bar punitive damages altogether. It may or may not be true.

A new trial, however, is ordered upon the one ground only, that of the excluded evidence.

*Judgment reversed.*