1688. SAVANNAH ELECTRIC COMPANY *v.* BADENHOOP.

1. As to the elements of damages recoverable by a passenger for an illegal ejection from a street-car, the facts of this case bring it squarely within the decision of the Supreme Court in *Georgia Railway & Electric Co.* v. *Baker*, 125 *Ga.* 562 (54 S. E. 639, 7 L. R. A. (N. S.) 103, 114 Am. St. R. 246).

2. Evidence as to the worldly circumstances and business success of the plaintiff is irrelevant and inadmissible in a suit to recover damages for an inexcusable trespass by the conductor in ejecting him from a street-car.

Action for damages, from city court of Savannah—Judge Freeman. January 5, 1909.

Argued March 10,—Decided June 29, 1909.
*Osborne & Lawrence,* for plaintiff in error.
*Cann, Barrow & McIntire,* contra.

HILL, C. J.  Badenhoop sued the Savannah Electric Company to recover damages for an alleged illegal ejection from one of its cars.  The jury gave him a verdict for $500, the full amount for which he sued.  The defendant filed a motion for a new trial, on the general grounds and on several special grounds, and it was overruled.  On the trial of the case there was no controversy as to the facts, which may be briefly stated as follows:  On Sunday, March 22, 1908, the plaintiff, with several of his companions, went out to Thunderbolt, coming back in the afternoon on a car of the defendant.  Plaintiff paid the fare for himself and his companions.  Their destination was West Broad street in Savannah, and to reach this street they had to change cars at Barnard and Broughton streets from the Thunderbolt line to either the Montgomery or the Battery Park line, and they asked the conductor to give them transfers to either one of these two lines.  The conductor, by mistake, gave them transfers to the A. & B. Belt.  The conductor did not give the transfers until they were about to get off the car at the point of transfer.  Badenhoop left his companions and took the first car for his destination.  He presented to the conductor of this car his transfer slip, and the conductor refused to take it, because it was not punched for his line, but was punched for the A. & B. line, and stated to Badenhoop that he could not accept the transfer slip, and that he would have to require him to pay fare.  Badenhoop refused to pay fare, and the conductor proceeded to take up the fares of the other passengers.  Having done so, he returned to Badenhoop and again demanded his fare, and Badenhoop again tendered him the transfer slip.  The conductor took it, threw it down on the floor of the car, and told Badenhoop that he could not accept it as his fare, and that he would have to pay his fare, or he would stop the car and require him to get off.  Badenhoop refused to pay fare, and told the conductor that he would have to eject him.  The manner of his ejection is described by plaintiff in the following language: "The conductor touched me on the shoulder, saying that I would have to get off the car.  He did not grab me.  I wanted him to grab hold of me.  I wanted to see if he would put me off or not.

He had stopped the car and said I would have to get off. I would not get off, and he came up and put his hands on my shoulder. That is all he did. . . I said, 'You saw me get off of that car. If there is any mistake, the other conductor made it, if he issued a Barnard street transfer. I certainly asked for a Battery Park or Montgomery street transfer. The conductor did not say anything out of the way to me. He was polite. What he did was really to ask me to get off the car, although I thought I had a right to ride on it. When he put his hand on me, I made him do that to see if he would put me off the car." Another witness for the plaintiff, as to the manner of the ejection, testified that the conductor insisted that the plaintiff would have to pay his fare or get off. "It was all in a pleasant way. No cross words passed between Mr. Badenhoop and the conductor,—strictly a matter of business." At the point where the plaintiff was ejected another car would have passed in a few minutes, and it would have carried him to his home, a distance of not quite half a mile. He did not wait for this car, but preferred to walk to his home, although it was slightly raining. When ejected he had money to pay the additional fare demanded of him by the conductor. Under this evidence the defendant admitted liability, but insisted that recovery could be had only for nominal damages, as there were no aggravating circumstances in connection with the act of expulsion; and special exception is made to the charge of the court in submitting to the jury, on the question of damages, §3906 of the Civil Code.

1. The question as to what damages are recoverable under the admitted facts in this case is not an open one in this State. The Supreme Court, in *Georgia Railway & Electric Co.* v. *Baker,* 125 *Ga.* 562, has held in explicit terms, in an analogous case, that general damages may be recovered as for an "inexcusable trespass," even though there be no aggravating circumstances in connection with the expulsion; that in such a case the damages may not only be compensatory, but punitive, and that §3906, supra, is applicable to the facts. This decision is in harmony with the previous decisions of that court on the same subject. *Georgia Railroad* v. *Homer,* 73 *Ga.* 251; *Georgia R. Co.* v. *Eskew,* 86 *Ga.* 641 (12 S. E. 1061, 22 Am. St. R. 490); *City and Suburban Ry.* v. *Brauss,* 70 *Ga.* 368. There are several other exceptions made to the charge

of the court and to the refusal to charge in accordance with certain requests. These exceptions are without merit.

2. On the trial of the case the court, over the objection of the defendant, that the testimony was irrelevant, permitted the plaintiff to prove that he had been successful in his business. This testimony seems to have been offered for the purpose of rebutting any theory or suggestion that the plaintiff had caused his ejection from the car for the purpose of making a case against the company. There was no evidence of this character, unless it could have been inferred from plaintiff's own testimony. Even if there had been such evidence, we are somewhat at a loss to see how it would have made this testimony relevant. A suggestion or inference that plaintiff was making a case against the company might tend to depreciate his character for integrity or honesty, which his success as a business man would in no wise tend to rebut. The fact that a man is successful in business relates to his worldly circumstances or position, or his ability to make money. It does not relate to his moral character. Without any personal application, but in the nature of a general observation, it is frequently the case that a successful business man may have acquired his success by dishonest methods. Except in cases where the entire injury is to the peace, happiness, or feelings of the plaintiff, evidence as to worldly circumstances should not be admitted or weighed in the ascertainment of damages. Civil Code, §3907; *Higgins* v. *Cherokee Railroad,* 73 *Ga.* 149; *Georgia Railroad* v. *Homer,* supra.

Ordinarily testimony that is merely irrelevant would not be sufficient cause for a reversal; but in this case the plaintiff was suing to recover damages not only for his wounded feelings, but to punish the defendant for an unlawful trespass; and the fact that he was a successful business man may have contributed somewhat to the size of this very large verdict, considered in connection with the actual insignificance of the trespass. The fact that the plaintiff had been successful in his business illumined no issue in the case, and only tended to unduly impress the jury with the importance and standing of the plaintiff, and to create prejudice against the defendant. If we were entirely satisfied with the amount of the verdict under the plaintiff's own testimony, we might not consider the error just discussed of sufficient importance to grant another trial. But the verdict is excepted to on the ground that

it is excessive; and, in the language of Chief Justice Bleckley, "We are strongly inclined to the opinion that the amount is out of reasonable and conscientious proportion to the magnitude of the injury." There is nothing in the evidence indicating that the conductor who ejected the plaintiff wilfully or wantonly violated any of his rights as a passenger. The negligence which caused his error was not his own, but that of the conductor on the first car, who had given the passenger an improper transfer. The situation presented to him a dilemma which he had to determine at his own peril and that of the company. Apparently the transfer slip did not entitle the passenger to ride, and the conductor was ignorant of the real facts in reference to the transfer which made it good, and he was compelled at his peril to take the statement of the passenger as to the truth of these facts. It is clear that the conductor made an honest mistake in the exercise of what he considered his duty to his employer, and even the plaintiff admitted that his language was polite and his conduct considerate. But conceding that the conductor was entirely at fault, and giving to the jury full scope in the exercise of their statutory discretion on the subject of damages, let us for a moment consider the elements of damage in connection with the amount of the verdict. The plaintiff's actual pecuniary loss was his five cents car fare. He was not entitled to recover anything for walking home in the rain, for this was a matter of his own volition, and the delay in waiting for the other car which would have come by in a few minutes was hardly appreciable as a matter of inconvenience. So his actual damage was insignificant. *Williams* v. *Rome Ry. &c. Co.,* 4 *Ga. App.* 370 (61 S. E. 495). He was also entitled to recover any damages that the enlightened conscience of an impartial jury might give him for his wounded feelings in having been expelled from the car. Under his own testimony and that of his fellow passengers, the most sensitive man could not have been greatly wounded by what occurred between him and the conductor on the car. The conductor made no charge against his integrity or his honesty, or his good faith in claiming to be entitled to ride on his transfer slip. The difference of opinion between the passenger and the conductor as to the right of the former to ride on his transfer slip furnished no occasion for any mortification or humiliation or chagrin on the part of the passenger, and there was

no indignity whatever offered to the passenger by the conductor, either in language or conduct, except the courteous insistence that he should pay fare or get off. According to the testimony of a passenger, "It was all in a pleasant way. No cross words between Mr. Badenhoop and the conductor, strictly a matter of business."

The jury were also authorized, under the decision of the Supreme Court in the *Baker* case, supra, and the other decisions cited, to find punitive damages in addition to compensatory damages. But punitive damages are awarded because of a wrong, and to deter any repetition of the wrong. Under the facts in this case the wrong was more technical than real. The evidence of the plaintiff also gives some foundation for the suggestion that he was not entirely intent upon maintaining his rights as a passenger, but that he endeavored to aggravate the wrong. He testified that he made the conductor put his hand on him, and that if his own hand had not been injured he would have forcibly resisted any effort to eject him. He seemed not to have been entirely oblivious to the fact that aggravating circumstances in connection with his ejection might be subsequently very useful. Of course, the jury did not believe that the plaintiff was more intent upon making a good case against the company than upon securing his rights as a passenger; for if they had thought so, they would not have given any punitive damages. But certainly no reasonable man can say that the circumstances in connection with this ejection called for any severe punishment. Taking the most extreme view of the evidence in behalf of the plaintiff, we think a verdict smaller in amount would have been more in harmony with the facts, and would have afforded sufficient legal balm for his woes and sufficient punishment for the wrongdoer.

It is also insisted by the plaintiff in error that the trial judge did not exercise the discretion vested in him by the statute. In the order overruling the motion for a new trial the judge says: "The verdict in this case strikes me as large, but I do not feel that I have a right to say that it is excessive." This statement of the learned judge is somewhat equivocal. Several constructions might be placed upon it. He either meant to say that he did not have a legal right to differ with the jury on this ground, or that he thought that he ought not to differ with the jury on a matter about which they were probably better judges. But the trial judge

has just as clear a right as the jury to consider the amount of a verdict; and unless the amount meets with his conscientious approval, it would be his duty to differ with the jury and to disapprove the verdict. In the Supreme Court and in this court a verdict must appear to be so grossly excessive as to suggest bias or prejudice, or mistake, in order to authorize a judgment that it was excessive; but the discretion lodged in the trial court does not require such strong conviction, to justify the setting aside of the verdict on this ground. This question has been fully discussed by this court in two decisions, and we do not know that we can add anything to what has been written in *Holland* v. *Williams,* 3 *Ga. App.* 636 (60 S. E. 331), and *Southern Ry. Co.* v. *Miller,* 3 *Ga. App.* 410 (59 S. E. 1115). We do not think it necessary to decide in this case that the learned trial judge did not exercise his discretion, but in view of the equivocal character of the language above quoted and the large amount of the verdict, we the more readily grant a new trial, because of the error of the court in admitting the testimony as to the worldly circumstances or business success of the plaintiff, as this evidence probably had some weight with the jury in fixing the amount of the verdict.

*Judgment reversed.*