## Louisville & Nashville Railroad Company v. Watson.

(Decided November 23, 1923.)

Appeal from Boyle Circuit Court.

1. Carriers—May Eject Person Refusing to Pay Fare of Infant in Charge on Tendering Back Unearned Portion of Fare.—An infant, for whose transportation the carrier is entitled to collect half fare, may be ejected from the train, if the one in charge of it, whether parent or other person, refuses to furnish a ticket or pay the fare, and the latter's refusal to do so either creates the right in the carrier to not only eject the infant but the one having it in charge, but the latter cannot be lawfully ejected, unless the conductor tenders to him the remaining portion of the fare paid for his transportation, after deducting that part consumed in transporting the two to the point of ejection.

2. Carriers—Passenger with Infant, Leaving Train Voluntarily in Absence of Conductor, Not Entitled to Tender of Unconsumed Fare Paid.—Where a conductor told a passenger who had paid her fare that she must either pay half fare for an infant in her charge within ten minutes or get off the train, and then went on about his duties, and in his absence the passenger got off at a station, she cannot claim that she was unlawfully ejected because the conductor did not tender back the unconsumed portion of the fare paid by her, she having thereby waived her right to insist on tender.

3. Carriers—Tendering Unconsumed Fare on Ejectment of Passenger Failing to Pay for Child Not Discrimination.—A carrier, on ejecting a passenger and an infant for failure of the passenger to pay fare for the infant, cannot retain the unconsumed portion of the fare paid by the passenger on the theory that to return it would be a discrimination in violation of regulatory statutes.

4. Carriers—Exemplary Damages Held Not Recoverable in Suit by Ejected Passenger.—Where conductor informed passenger that she must get off train if she did not pay fare for infant in her charge, without using any bad language or touching her, and she voluntarily got off, in the conductor's absence, at a station, she was not entitled to exemplary damages.

5. Carriers—Anticipation of Miscarriage Not to be Considered in Fixing Damages for Wrongful Ejection from Train.—In an action for damages for unlawful ejection from train, it was error to base a claim for damages on mere anticipation of a miscarriage, when no fact looking to it was testified to by any one, and the child was subsequently normally born.

6. Carriers—Verdict for $1,000.00 for Ejection from Train Held Excescessive.—Where a passenger ejected from train suffered nothing more than the inconvenience of discontinuing her trip, and being compelled to return to her mother's home, eight miles distant, in the daytime, a verdict of $1,000.00 was grossly excessive.

7. Carriers—Conductor Need Not Return Entire Fare Paid on Ejecting Passenger.—Where a passenger is ejected for failure to pay half fare for an infant in her charge, the conductor need not return the full fare which she paid for her ticket, but is only required to tender the balance of such fare, after deducting a sum sufficient to pay the fare of herself and child up to the point of ejection.

8. Carriers—Instruction in Ejection Case Should Require Mortification and Humiliation to be Proximate Result.—In an action for damages for wrongful ejection from train, instructions permitting recovery of damages for mortification and humiliation should require them to be the proximate result of the wrongful ejection.

9. Carriers—Evidence as to Why Passenger did Not Purchase Ticket for Child, etc., Inadmissible in Action for Wrongful Ejection.—In an action by passenger ejected because not paying fare for infant in her charge, it was improper to admit evidence of the reason why plaintiff did not purchase a ticket for her child, or that she had previously carried it on the train without paying fare, or as to whether she had the means to pay its fare, or that she offered to do so when she arrived at her destination.

BENJAMIN D. WARFIELD and JOHN W. RAWLINGS for appellant.

BAGBY & HUGUELY for appellee.

Opinion of the Court by Judge Thomas—Reversing.

On November 17, 1920, appellee and plaintiff below, Josephine Watson, was and had been for some time visit-

ing her mother at Parksville, Kentucky. She was married and lived with her husband at New Haven, Kentucky, a distance of about sixty miles from Parksville, and both places being located on the line of appellant and defendant, Louisville & Nashville Railroad Company. On the day named she purchased a ticket for herself for her return trip home and boarded the defendant's train for that purpose in the early part of the afternoon with her infant daughter, aged five years and eight months. Shortly after the train left Parksville, the conductor approached plaintiff for her carfare and she gave him her ticket. Upon inquiry he learned that the child was above the age (five years) for free transportation and, under the rules of the company, was compelled to pay half fare. Plaintiff took issue with the conductor and insisted that children were entitled to free transportation up to six years of age. Some discussion was engaged in but the conductor went through the train, collected the fares of the passengers and returned to plaintiff and drew from his coat pocket the printed rules of the company, and took a seat in front of her and endeavored to show her the rules of the company under which he was acting and to explain to her his duties in the premises, but she knocked the pamphlet from his hands to the floor, and at that time another station was about to be reached and the conductor left her and went into the smoking compartment of the coach in front. While he was in there the train arrived at the station of Brumfield and when it stopped there the plaintiff took her grip and walked out and disembarked with her child. The brakeman assisted her to alight but informed her that it was not her destination. The agent at that place, who was present, took her grip and at her request went with her to the house of a friend living nearby, from which place her mother was notified and within a short time some one came after her and she was carried a distance of eight miles to her mother's home, where she remained some days and returned to her home in New Haven.

She brought this action to recover damages for what she alleged was the wrongful ejection, which she fixed in her petition at the sum of $5,000.00. Her petition not only alleged that she was actually ejected at Brumfield by the defendant's conductor, and was compelled by him to leave the train at that point, but that he did so "wrongfully, willfully and maliciously" and in violation of her

rights.   By an amended petition she alleged that in approaching her the conductor did so in a rude, angry and insulting manner so as to greatly frighten her and to cause her to suffer great humiliation and mental anguish by reason thereof, and that she suffered from the effects of the inclement weather and was greatly inconvenienced because of the darkness of the hour and in returning to the home of her mother.  She further alleged in the amendment that the conductor did not tender or offer to tender to her the ticket which she had given him or the price thereof.   Proper pleadings made the issues and upon trial the jury, under the issues as submitted by the instructions, returned a verdict in favor of plaintiff for $1,000.00   Defendant's motion for a new trial was overruled and from the judgment pronounced on the verdict it prosecutes this appeal, relying on numerous grounds for a reversal, chief among which are: (1), that the court should have sustained the defendant's motion for a peremptory instruction in its favor offered at the close of plaintiff's testimony, and at the close of all the testimony, and (2), that the verdict is excessive.

In support of ground (1), it is argued that an infant, for whose transportation the carrier is entitled to collect half fare, may be ejected from the train if the one in charge of it (whether parent or other person) refuses to furnish a ticket or pay the fare, and that the latter's refusal to do so creates the right in the carrier to not only eject the infant but the one having it in charge upon the grounds that the custodian of the infant impliedly agrees to pay its fare, and that the safety of the infant demands that it should not be put off alone or that the two should be separated; and the argument in the abstract seems to be supported by text writers and adjudicated cases.   10 Corpus Juris, 733; Hutchinson on Carriers, 3rd edition, vol. 2, section 1025; Braun v. Northern Pacific Ry. Co., 79 Minn. 404, 82 N. W. R. 675, 984, 79 Am. St. Rep. 497; Warfield v. Railroad Co., 104 Tenn. 79, 78 Am. St. Rep. 911; Lakeshore, etc. Ry. Co. v. Orndorff, 55 Ohio St. R. 589, 60 Am. St. Rep. 716, 38 L. R. A. 140; P. C. C. & St. L. Ry. Co. v. Dewin, 86 Ill. 296, and other cases cited in the notes to those opinions.   In each of those cases, however, where the facts presented the point and the court's attention was directed to it, it was held that the person in charge of the infant could not be lawfully ejected, notwithstanding he refused to pay the latter's fare, *unless* the conductor tendered or offered

to tender to him the remaining portion of the fare paid for his transportation after deducting that part of it which had been consumed in transporting the two to the point of ejection, and that unless such tender was made or offered to be made the ejection would be wrongful. See also Hutchinson on Carriers, *supra,* section 1087; 5 R. C. L. 118 and 6 Cyc. 550. Defendant's counsel seem to concede the correctness of the latter proposition as an established principle of the law relating to carriers of passengers, but it is sought to be avoided in this case upon the grounds (a), that under the proven facts plaintiff left the train at Brumfield on her own volition and without the knowledge of the conductor that she intended to do so and without an opportunity on his part to make the tender, and (b), that under both the federal and state law now in existence prohibiting a carrier of passengers from discriminating in favor of any of them as to transportation charges, it was the imperative duty of the conductor to eject plaintiff when she declined to pay the fare for her infant daughter, and that he could do so under such federal and state regulations without tendering or offering to tender the unearned portion of it.

Contention (a) is undoubtedly sound, unless plaintiff was justified in voluntarily leaving the train at any time and place most suitable to her convenience after the conductor stated to her that if she did not pay the fare for the child within ten minutes he would be compelled to put her off, a fact to which she testified but which he and other witnesses for defendant denied. Her right to do so at a time and place of her own choosing and in the absence and without the knowledge of the conductor, and at the same time preserve her rights as a wrongfully ejected passenger is sought to be upheld by the text in 10 Corpus Juris, 752; 5 R. C. L., 114-15; the cases of Georgia Railroad and Banking Co. v. Eskew, 86 Ga. 641, 22 Am. St. Rep. 490; Boling v. St. Louis, etc. Railroad Co., 189 Mo. 219, and others cited in note 79 of Corpus Juris and note 7, R. C. L., *supra.* But a reading of those references will show that they do not apply to the facts of this case and are far from sustaining plaintiff's right to voluntarily leave the train at Brumfield under the proven circumstances without waiving her rights as a wrongfully ejected passenger. The text in Corpus Juries, relied on, says: "To constitute such ejection it is not necessary that any violence shall have been used. If the employee

of the carrier, authorized to determine whether or not a person claiming to be a passenger shall be transported, notified such person that he must leave the train or other vehicle, the person so notified may, without further resistance, depart therefrom and maintain an action for damages if the ejection is without right, or at an improper place, particularly where it is made apparent to the passenger that force will be used unless such order is obeyed; and, if the command to get off is followed by threats to throw the passenger off if he does not get off, there is, in law, a forcible ejection, although the employee does not touch the passenger.''

In the Eskew case, *supra,* the passenger had been informed by the conductor that he would be ejected from the train at Conyers, the next station on the road. Without waiting to be forcibly ejected the passenger voluntarily left the train at that point, and the court held, in substance, that the passenger was justified in doing so, although the conductor was not immediately present at the time, since plaintiff's act in doing so was in ''obedience to the conductor's previous command,'' and that he was not compelled to await the application of physical force, and in support of that holding the opinion said: ''A passenger, whether right or wrong in any contention or misunderstanding with a conductor, is under no duty, legal or moral, to stand out until the conductor appeals to force for the execution of his commands. If the passenger obeys, and thereby does an act to which his own will does not consent, he is coerced.'' The rule so announced is founded in sound sense and logic and is one of universal application under facts calling for it; but it would plainly be a perversion of the rule to apply it to the facts of this case. If it had been proven that the conductor had positively commanded plaintiff to leave the train at Brumfield on penalty of a forcible ejection by him if she refused to do so, we would have a case coming within the rule so announced and which would permit plaintiff's voluntary departure without losing her rights as a wrongfully ejected passenger. Under the facts of this case, plaintiff wrongfully refused to pay for the transportation of her infant daughter, which gave to the conductor the right to eject both her and her daughter, conditioned only upon his tendering or offering to tender her the unearned portion of her fare, and he had up to the time of ejecting her, if he should

finally do so, in which to make such tender. Indeed he would not know the amount of the tender without first fixing the place for the ejectment, and plaintiff necessarily waived the right to insist on such tender by leaving the train in the absence of the conductor and without a specific command from him to do so at that place, and thereby deprive him of the opportunity of performing the condition precedent to the exercise of his right to eject her. It may be that the fare for the infant could and would have been produced or arranged in some manner, or the conductor may have not intended to exercise his right of ejecting plaintiff within the time or at all, or if he did do so to tender to her the unearned portion of her fare at the place where the right was exercised. But, whatever might have been the consequences, plaintiff certainly did not have the right to leave the train in the conductor's absence at a time and place when he was not threatening to apply any physical force, and when there was no immediate command from him to her to do so. If, without waiting for such threats or immediate commands, she saw proper to do so when the conductor was absent, without notifying him of her intention and purpose, so as to give him an opportunity to make the requisite tender, she acted on her own responsibility and waived the right to insist thereon and can not claim that she was constructively ejected from the train or ground a sustainable action therefor. The expressed conclusions, under the facts of this case, are not only in harmony with just and fair conduct toward the carrier by the passenger, but to hold otherwise would open wide the door for vexatious litigation by litigants who might mistakingly conclude that they had a right to voluntarily leave the train when there were no accompanying facts at the time entitling them to do so.

We are not prepared, however, to accept contention (b), in avoidance of the failure of the conductor to tender or offer to tender the unearned portion of the ticket purchased by plaintiff. There is nothing in such regulatory statutes authorizing the carrier to retain the unearned portion of the passenger's fare although it may have the right at the time to eject him by complying or offering to comply with a condition precedent which is within its power to perform. The imposition of such precedent condition by no means militates against the requirements of such regulatory statutes.

If the case had been a submittable one then we are convinced that contention (2) is well taken and must be sustained. No act or conduct of the conductor is testified to which would entitle plaintiff to the recovery of exemplary damages, nor was that issue submitted to the jury. Neither were the statements nor the conduct of that official of such a nature as would be calculated in the least to alarm or frighten plaintiff or to cause her any undue excitement. It is true that she testified that he shook in and almost touched her face with the paper which he drew from his pocket, which, as we have seen, contained the rules from the company measuring his duties. The conductor denied having done so and he is supported by a number of passengers, all of whom state that plaintiff knocked the paper out of the conductor's hands, and which she admits and testified that the conductor "didn't use any bad language or nothing," but that he looked angry and mad. She does not even claim that he talked loud or in any wise insulting. It is, therefore, clear that compensatory damages only are recoverable under the facts of the case.

It was sought by a number of leading and improperly framed questions to exaggerate the grounds for compensatory damages for injuries to plaintiff's feelings and physical sufferings as well as her humiliation. But when analyzed nothing happened to plaintiff except that she became somewhat angered and after alighting from the train went to the home of a Mr. Martin, her acquaintance or friend, where her mother was notified, and within an hour or an hour and a half she was on her way back to her mother's. Very improper questions were injected into the case concerning a *possible* miscarriage, and it is sought to base a claim for damages on mere anticipation of such a misfortune when no fact looking to it was testified to by any one, and the child was normally born something like four months thereafter.

There is no evidence to show that plaintiff suffered anything more than the inconvenience of discontinuing her trip on the train, and being compelled to return to her mother's home, a distance, as we have seen, of not exceeding eight miles, but which according to some of the testimony was only six miles. Neither the occurrence nor the trip afterwards back to the mother's happened at night, and under all cases to which we have been cited the verdict of $1,000.00 is grossly excessive. The only two

domestic cases relied on in support of the size of the verdict are Lexington & Eastern Ry. Co. v. Lyons, 104 Ky. 23, and L. H. & St. L. Ry. Co. v. Joplin, 21 Ky. L. R. 1380. The opinion in the first one of those cases does not show the size of the verdict, but we learn from the record that it was $260.00, and the court held that it was "many times greater than the amount of actual damage sustained by appellee, or that can be legally or justly sanctioned by any court." In the Joplin case the verdict was $500.00. The facts, as testified to by plaintiff therein, authorized the recovery of exemplary damages. He was forcibly ejected from the train in the night time at a lonesome and dangerous place in the country, four miles from the depot from whence he started, and was compelled to walk back to it. Under those circumstances plus the fact that he was in a sick and afflicted condition, the court said: "Considering the physical condition of the appellee and the character of the locality where he was ejected, the damages, if regarded as merely compensatory, are not excessive." Manifestly, the facts of that case are much more aggravated and entirely different from those in this one. Analogous cases where this court has held the verdict excessive are C. N. O. & T. P. Ry. Co. v. Carson, 145 Ky. 81 (verdict $400.00); L. & N. R. R. Co. v. Fish, 127 S. W. R. (Ky). 519 (verdict $500.00); L. & N. R. R. Co. v. Breckinridge, 99 Ky. 1 (verdict $500.00); Camden Interstate R. Co. v. Frazier, 97 S. W. R. (Ky.) 776 (verdict against electric railway $500.00); L. & N. R. R. Co. v. Jordan, 112 Ky. 473 (verdict $250.00); M. & O. R. Co. v. Reeves, 25 Ky. L. R. 2236 (verdict $400.00); and Southern Ry. Co. in Ky. v. Hawkins, 121 Ky. 415 (verdict $1,000.00), though in the latter case plaintiff was ejected in the country and was compelled to walk back to the depot from whence he started and remain there until the next day.

The instructions are complained of, but we find no fault with any of them (if a submittable case was developed), except number one (1), wherein the right of the conductor to eject plaintiff was conditioned upon his returning or offering to return the full fare which she had paid for her ticket, when as we have seen, the only return he was required to make was the balance of such fare after deducting therefrom a sum sufficient to pay the fare of herself and child up to the point of ejection. Furthermore, the instructions to be accurately correct should require the mortification and humiliation suffered by plain-

tiff, if any, to be the proximate result of the wrongful ejectment.

We are also of the opinion that it was improper to admit evidence of the reason why plaintiff did not purchase a ticket for her child, or that she had previously carried it on the train without paying fare after it was five years of age, or as to whether she had the means to pay its fare, or that she offered to do so when she arrived at her destination. None of those matters affect any of the legal questions involved in the case and their probable effect was to prejudice the minds of the jury.

Wherefore, for the reasons stated, the judgment is reversed with directions to grant the motion for a new trial, and if the evidence should be substantially the same on the second trial the court will sustain the motion for a peremptory instruction, but if the evidence should authorize a submission of the case to the jury then for further proceedings consistent with this opinion.