### NEW YORK, N. H. & H. R. CO. v. BAKER.

(Circuit Court of Appeals, Second Circuit. December 7, 1899.)

#### No. 51.

CARRIERS—LIABILITY FOR INJURY TO PASSENGER.

An act of the legislature of New York required the elevation of the track of a railroad in New York City, and created a municipal board, which was given entire charge of the work through a designated portion of the city. While the work was being done the railroad company constructed temporary tracks on either side of the structure being built, over which it ran its trains. Through the negligence of a contractor under the board, engaged in the work, a derrick was permitted to swing over one of the tracks, and struck a car in a passing train, injuring the plaintiff, who was a passenger therein. *Held*, that the state having taken the work entirely out of the hands of the railroad company, and placed it in the hands of others, over whom the company had no control, the latter was not liable for their negligence, or for the injury to the plaintiff, unless its own employés failed to exercise proper care to anticipate or avoid the danger.

In Error to the Circuit Court of the United States for the Southern District of New York.

This is a writ of error to the circuit court, Southern district of New York, to review a judgment in favor of defendant in error, who was plaintiff below, entered upon the verdict of a jury against plaintiff in error, who was defendant below. The action was brought to

recover damages for the loss of services of plaintiff's wife, caused by an injury received by her while a passenger on a train operated by defendant. The facts sufficiently appear in the opinion.

H. W. Taft, for plaintiff in error.

John J. Crawford, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. The accident happened April 17, 1895, in that part of 4th avenue called "Park Avenue," near 109th street, New York City, at which place the work known as the "Fourth Avenue Improvement" was at that time in progress. The plaintiff's wife was riding in the last coach of a passenger train of defendant coming from Mt. Vernon to Grand Central Depot, New York City. The circumstances of the accident are accurately set forth in the brief of plaintiff in error as follows:

"The train was running past that portion of the avenue where there is now an elevated stone viaduct. The viaduct was not then completed, but the walls on either side were in process of construction. Trains were being run on a temporary wooden trestle which was built over the avenue, and outside of the walls of the viaduct. Incoming trains ran on the east of these walls; outgoing trains, on the west. At the place of the accident the walls which now sustain the roadbed were being erected, and a derrick was placed between the walls for the purpose of placing stone upon them. This derrick stood from 16 to 18 feet from the nearest rail of the incoming or south-bound track. * * * To the end of the derrick boom was fastened a fall and block, with a hook attached. The boom was elevated and lowered and the derrick swung by horse power. When the boom of the derrick was lowered sufficiently and swung towards the track, it projected over the track. * * * Just before the accident a stone had been placed upon the wall next to the south-bound track, and one of the inspectors in charge of the work had found fault with the way it was set, and had directed Flaherty [a subcontractor who was doing the masonry work] to reset it. At that time the chain, block and fall were over the place where the stone had been set on the wall. Flaherty gave the order to pick up the stone and reset it, the first direction being to throw the boom up. While the boom was being lifted, the train which carried Mrs. Baker passed by, the boom swung over the track, and the hook suspended from the chain in some way caught in one of the cars and threw the boom towards the south, causing it to strike against a guy rope and swing back. On the rebound some portion of the tackle struck one of the windows of the car in which Mrs. Baker was riding, causing the injuries complained of. The derrick and boom could be used in such a manner that the boom would not interfere with passing trains, and it was customary so to operate it. This was the first accident resulting from the use of this derrick, though it had been in use some months."

Manifestly, the proximate cause of the accident was a careless manipulation of the derrick by those who had it in operation. A single assignment of error has been presented in the argument, namely, that the trial judge erred in charging the jury as follows:

"If by due diligence on the part of those men who were handling the derrick * * * this accident might have been prevented, the plaintiff is entitled to a verdict;" and later on: "If it was the fault of those who were doing that work that caused this injury to this woman, the defendant is liable."

The roadbed and railroad on which the accident happened were owned by New York & Harlem Railroad Company. The defendant's trains were run over them under a lease made in 1848. The legisla-

ture of the state of New York, having determined to raise the grade of the railroad bridge at Harlem river, and the approaches thereto, provided for the changes necessary to that end by chapter 339, Laws 1892, and some amendatory acts (chapter 548, Laws 1894, and chapter 594, Laws 1896). The relevant parts of such legislation directed that the grade of the New York & Harlem Railroad be changed from 106th to 149th streets, and that the viaduct be adapted to the new grade line by raising the parapet walls, etc. So much of the work as consisted in raising the bridge and the approach from the north, it left the railroad company to do in its own way and at its own cost. As to so much, however, as lay south of the Harlem river, which included the location of the accident, it took the work entirely out of the hands of the railroad company, confiding the execution, direction, and superintendence of the work to a board to be known as the "Board of Improvement of Park Avenue above 106th Street, in the City of New York." This board was to consist of five members, two of them skilled engineers, all appointed by the mayor of New York, who was authorized to fill any vacancies that might occur. The board were given power to pass suitable by-laws, to select a presiding officer and a secretary, to keep records, and accounts, and were expressly required "to take entire charge and control of said improvement from 106th street to Harlem river, to execute the same in a substantial and workmanlike manner." They were further required to do such work as far as possible by contract. One half of the expense (but such half not to exceed $750,000) was to be assessed upon property benefited and on the city at large. The other half was to be paid by the New York Central & Hudson River Railroad Company, or by the New York & Harlem. In pursuance of the powers conferred, and of the requirements of this act, the board for the improvement of Park avenue contracted with Norton & Hulsekemper for the doing of the work, under the superintendence of the "engineer of said board in charge, and such assistants and inspectors under him as may be appointed by him or by said board." Flaherty was a subcontractor of Norton & Hulsekemper.

The measure of responsibility of a railroad company to the passengers it contracts to carry is well settled, and the authorities cited on the argument do not conflict. The carrier is not an insurer of the safety of the passenger. For the careless or malicious act of a trespasser upon the track, tampering with the rails or switches, it would not be responsible, although it would be for any lack of "proper care" to protect against such interference. So, too, it would not be responsible for the carelessness of a workman employed by the owner of property contiguous to its line to blast out rock, whereby a flying fragment was thrown against a train, but it would be liable for lack of "proper care" in anticipating and guarding against the probable effects of blasting dangerously near its track. What is "proper care" in all such cases will depend upon, and probably vary with, the circumstances of each particular case. Deyo v. Railroad Co., 34 N. Y. 9; Worth v. Railway Co. (C. C.) 51 Fed. 171; Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Thomas v. Railroad Co., 148 Pa. St. 180, 23 Atl. 989; Fredericks v. Railroad (Pa. Sup.)

27 Atl. 689; Missimer v. Railroad, 17 Phila. 172. The degree of care required is well expressed in Pennsylvania Co. v. Roy, 102 U. S. 456, 26 L. Ed. 144, as follows:

"Although the carrier does not warrant the safety of the passengers at all events, yet his undertaking and liability as to them go to the extent that he or his agents, when he acts by agents, shall possess competent skill, and, as far as human care and foresight can go, he will transport them safely. * * * [He must] observe the utmost caution characteristic of very careful, prudent men."

And this obligation the carrier cannot get rid of by any act of his which substitutes some one other than himself as the conservator of the safety of his track or of the vehicles which run upon it. Thus, if, instead of building, equipping, and managing its own road-bed and tracks, it leases from some other company the right to run upon that company's line, it is nevertheless its duty "to make the track hired as safe as the track owned." "It must see and know that the track is in good and safe condition, and that the trains of the other company are so ordered as not to interfere with the full discharge of its own duty to its own passengers, because such trains would be a danger against which it would be bound to provide." Murray v. Railroad Co., 66 Conn. 512, 34 Atl. 506; Thomas v. Railway Co., L. R. 6 Q. B. 266. If it allows some other railroad company to run trains on its track, it will be liable for damages to its own passengers from the mismanagement of such trains, the same as if they were operated by its own employés. Railroad Co. v. Barron, 5 Wall. 90, 18 L. Ed. 591. If it chooses to put the passenger, not into its own cars, but into those of some sleeping-car company which it runs with its trains, it owes the same duty of inspection as if they were its own; and the conductor and porter of the sleeping car "become in law, so far as the passenger is concerned, the servants and employés of the railroad company." Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Dwinnelle v. Railroad Co., 120 N. Y. 117, 24 N. E. 319. If, "whilst using its track for the carriage of passengers, a railroad company engages in a work to be done on its road, and in the immediate proximity of its track, negligence in the performance of which would, in the estimation and opinion of cautious persons, involve the hazard of obstruction to the passage of its cars, it would be just as incompetent for it, in the case of an accident to a passenger caused by an obstruction arising from negligence in the performance of such work, to show merely that it had placed the work in the hands of a contractor, and that the carelessness was caused by one of his employés. as it would be for it, in the case of an accident to a passenger arising from a want of skill in the management and conduct of the train, to show that such management and conduct had been let out to a contractor, and that the accident was due exclusively to the carelessness of one of his employés." Railroad Co. v. Sanger, 15 Grat. 230; Carrico v. Railway Co., 39 W. Va. 86, 19 S. E. 571.

It will be observed that through all these cases there runs the idea of choice,—the power to act or to refrain from acting. The company need not have taken a lease; it could have built and oper-

ated its own road. It need not have allowed an independent road to run cars on its track; it could have kept them off. It need not have carried its passengers in cars of another company; it could have provided its own. It need not have turned the work in the vicinity of its track over to an independent contractor; it could have done it by its own workmen, under the direction of its own engineers and inspectors. The case at bar is unlike any that have been cited supra, but is closely parallel to the one relied on by defendant, where the work which resulted in disastrous consequences was being prosecuted by the corporation of the city of London. Daniel v. Railway Co., L. R. 3 C. P. 216, 594; on appeal, L. R. 5 H. L. 45. The fact that the accident happened on the road of a lessor company is not material. Under the authorities the situation is the same as if the defendant owned the roadbed and tracks of the New York & Harlem Company. But would the latter have been liable for the negligence of the men operating the derrick if the plaintiff had been one of its passengers riding in its cars? We think not. That road had no choice left to it. The state intervened, and directed that a work, which it had the power to require to be done, should be done, not by the railroad, nor even by the city, but by an independent board, in the creation of which the defendant had no voice, over whose selection of employés it had no control, with the discharge of whose functions it could not interfere, and whose operations it was powerless to prevent. Whether, knowing that such work was being done, and that the men engaged in it might be careless, and so produce disaster to defendant's cars and injury to its passengers, it "observed the utmost caution characteristic of very careful, prudent men," is another question,—one properly for the jury to decide upon consideration of all the circumstances of the case. But the charge went further. Under the court's instructions, the derrick gang or some or one of them being evidently negligent, the jury might have found the defendant liable, although they were satisfied that the utmost measure of human skill and vigilance had been exercised by the defendant in anticipating every possible danger and avoiding or guarding against it. Nor can we say that this instruction did not operate to the defendant's prejudice. The jury were directed to return a general verdict, and also to answer the following question:

"After the boom of the derrick or its attachments had begun moving towards the track, could the train have been slowed down or stopped after coming in sight in time to avoid the accident?"

They failed to answer the question, the foreman stating that they were about evenly divided upon it, but brought in a general verdict against the defendant. It would seem that the instruction that, independent of any negligence on the part of its own employés or of those of the lessor company, defendant could be held liable if the persons handling the derrick were negligent, must have been persuasive to such a result. The judgment of the circuit court is reversed, and the cause remanded for a new trial.