FARMERS' LOAN & TRUST CO. v. NORTHERN PAC. R. CO. (AMERICAN TRADING CO., Intervener.)

(Circuit Court, S. D. New York. January 18, 1902.)

1. COMMON CARRIERS—GOODS—DELAY—CONTRABAND OF WAR.

The receiver of a railroad company having a contract with a Pacific steamship company for interchange of traffic accepted a quantity of pig lead to be carried to Japan, and received the freight therefor, delivering to the shipper a bill of lading "subject to delay." The lead was forwarded to Tacoma, and seasonably put on board a steamship about to sail for Japan, when the deputy collector refused to clear the vessel with the lead on board, as contraband of war, China and Japan then being at war. The lead was therefore unloaded and left, and was not delivered at Japan until its value there was considerably reduced. *Held*, that the receiver was not liable for the damage resulting from such delay.

2. SAME—CLEARANCE OF VESSEL—NATURE OF SHIPMENT.

While it may be the duty of a common carrier receiving freight for transportation by rail and beyond the seas ordinarily to provide for the clearance of the vessel in which the goods are to be shipped, the shipper cannot complain of failure to obtain such clearance when it is prevented by the nature of the shipment.

In Equity.

Frederic B. Jennings and Howard Van Sinderen, for petitioner.

Edward B. Hill, for petitionee.

WHEELER, District Judge. The Northern Pacific Railroad Company had a contract with the Northern Pacific Steamship Company for interchange of traffic between points in the United States and Asiatic ports, by the terms of which the railroad company had the exclusive right to appoint agents in the United States, and the steamship company thereby authorized the railroad company "and its appointed agents to act as agents for" it, "and to issue bills of lading and passenger tickets, and to make and name rates on all traffic for the Asiatic points served by the steamships." The receivers of the railroad company authorized by the court to carry on its business continued to act under this arrangement, and had an agent at New York. In September, 1894, during the war between China and Japan, the intervener, the trading company, obtained of him rates, which it accepted, for carrying 200 tons of pig lead from Newark, N. J., by steamship from Tacoma sailing October 30th, to Yokohama, Japan. The freight was paid to the receivers, a bill of lading "subject to delay" was delivered to the trading company, and received without objection and negotiated, and the lead was forwarded to Tacoma, and seasonably put on board the steamship to sail for Yokohama October 30th. The

deputy collector refused to clear the vessel with the lead on board, as contraband of war, and it was unloaded and left. The next vessel refused to take it, and when it arrived at Yokohama it had fallen $26,704.02 from the contract price at which it was to be received from the steamship sailing October 30th. This petition is brought to charge those who have by sale under decree received the property from, and subject to the obligations of, the receivers, with this loss.

It is obvious from this brief statement that the delay and consequent loss arose from the official act of the deputy collector, lawfully authorized, whether well founded or not, with reference to the nature and uses of this very property, and not from anything done or omitted by or for the receivers. The granting of the clearance was within the jurisdiction and authority of the collector, and the departure without one was prohibited by law, and would have exposed the master of the vessel to a penalty. Rev. St. § 4197. The refusal, although not well founded, was not within the control or responsibility of the receivers, as it did not relate to anything with which they had to do, but only to the nature of this shipment. The case in this respect is like Railroad Co. v. Baker, 39 C. C. A. 237, 98 Fed. 694, 50 L. R. A. 201, where a passenger was injured on the tracks of another road in the line of the plaintiff in error by the negligence of those engaged under a law of the state in changing tracks; and it was held, reviewing the cases where carriers had been holden for what occurred on the lines of others, that the law excused the plaintiff in error for what was being done, although negligently, under it. The circuit court of appeals said (Lacombe, J.): "It will be observed that through all these cases there was an element of choice,—the power to act or to refrain from acting." And, after asking if the other company would have been liable if the plaintiff had been one of its passengers, answered: "We think not. That road had no choice left to it." Here the steamship, if the receivers were responsible for its movements, had no choice left to it but to leave the lead. That was detained by the superior power of the government.

It is said that it belonged to the receivers to provide for the clearance of the vessel, which might be true as to anything else; but it would seem that the shipper could not complain of the carrier for the want of a clearance which the nature of the shipment prevented.

The trading company claims that earlier notice of the situation should have been given, but there is nothing to show that it would have saved, or have given opportunity to save, any part of the loss, or that an earlier shipment would. This view obviates examination as to whether the receivers were liable beyond delivery to the steamship company.

Petition of intervention dismissed.