### S. S. McCLURE CO. v. PHILIPP.

(Circuit Court of Appeals, Second Circuit. May 19, 1909.)

#### No. 219.

1. LIBEL AND SLANDER (§ 107*)—DAMAGES—MENTAL SUFFERING—EVIDENCE.

   In view of the settled law that in an action for libel the jury may consider the mental suffering of the plaintiff attributable to the libelous article, it is not error to permit him to testify as to his feelings, not only on reading the alleged libelous article, but also a subsequent article pleaded and introduced by defendant as a retraction, as bearing on the question whether the alleged retraction diminished the injury, where the jury are

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

properly instructed that they cannot allow damages on account of the second article.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 299; Dec. Dig. § 107.*

Retraction, apology, or separation as ground for mitigation of damages, see note to Post Pub. Co. v. Butler, 71 C. C. A. 315.]

2. LIBEL AND SLANDER (§ 110*)—ACTION—EVIDENCE IN MITIGATION.

Where an alleged libelous article charged plaintiff with having received rebates from a railroad company between certain dates, in violation of the statute making such receipt a criminal offense, it was not error to exclude as irrelevant testimony offered to show that plaintiff, as manager of a corporation, had received rebates several years before the enactment of such statute.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 308, 311; Dec. Dig. § 110.*]

3. LIBEL AND SLANDER (§ 124*)—ACTION—INSTRUCTIONS.

An instruction in an action for libel considered, and *held* without prejudice to the defendant, even if a statement contained therein was not technically correct.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 124.*]

4. LIBEL AND SLANDER (§ 124*)—ACTION—INSTRUCTIONS.

In an action for libel in publishing an article charging plaintiff with having received rebates from a railroad company, which was a criminal offense under the statute (Act Feb. 19. 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880]), and referring to the same as a "private graft," it was not error for the court to instruct the jury as to the effect and meaning of the word "graft," as used therein.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 366; Dec. Dig. § 124.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

On writ of error to the Circuit Court for the Southern District of New York to review a judgment entered upon the verdict of a jury, in an action of libel, for $15,000 in favor of the plaintiff.

Roe & McCombs (Gilbert E. Roe, W. F. McCombs, Jr., and Charles L. Burr, of counsel), for plaintiff in error.

Huntington, Rhinelander & Seymour (Francis C. Huntington, Thomas N. Rhinelander, Origen S. Seymour, and Wm. C. Quarles, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The action is for libel. The article alleged to be libelous was published in the January, 1906, number of the defendant's magazine. In brief, the article charges that the plaintiff, acting as president and manager of the Union Refrigerator Transit Company of Wisconsin, had received rebates, and other unlawful perquisites, in the form of "commissions" from the Chicago, Milwaukee & St. Paul Railroad Company at Milwaukee, Wis., where the plaintiff resides. The answer alleges justification, privilege and mitigation. After it had been discovered that the January article was, in certain important particulars, erroneous, a second article was published, in April, 1906, which the defendant considers "a complete retraction." The plaintiff, on the contrary, regards it as an aggravation of

the original libel. The April article was received under a stipulation providing for an amendment of the answer permitting its reception in evidence.

The first assignment of error which, in our judgment, requires serious consideration, challenges the action of the trial court in permitting the plaintiff to describe his feelings after reading the articles in question. He testified, after objection and exception, that when he read the January article he was much distressed because of the effect it would have upon his family, friends, business acquaintances, and his social and financial standing. He was then asked, "How did you feel after you read the article that was published in the April magazine?" The answer was, "I felt worse." It is well settled that in an action of libel the jury may in awarding damages consider the mental suffering of the plaintiff attributable to the libelous article. It is quite true that in, perhaps, the majority of cases the question is presented to the jury as a deduction from established facts. In the case at bar, with all the facts relating to the plaintiff's domestic, social and business relations established, argument as to effect of the false charges upon his mind might, it would seem, have been presented as effectively without the testimony complained of as with it. Before coming to the question of damages the jury necessarily had to reach the conclusion that the defendant had falsely accused the plaintiff of being a criminal and the conclusion that he had suffered great mental anguish from such a charge would naturally follow. But what may be considered by the jury may be proved, and where the question relates to the mental suffering of the plaintiff no witness can speak ex cathedra but the plaintiff himself.

Regarding the April article, which was introduced by the defendant as a retraction of the January charges and to show that the January article was not written maliciously, we see no reason why the plaintiff was precluded from showing that it did not have the effect upon his mental condition which the defendant thinks it should have had. To illustrate: Assume that in an action for malpractice the defendant admits that the initial treatment prescribed by him was improper, but that at a later date, by giving the proper remedy, he effected a complete cure. It will probably not be contended that the plaintiff in such an action is precluded from showing that his health was worse after the alleged cure than it was before; in other words, that the wound was not healed. If the jury found that instead of being the straightforward, manly and open disavowal which the case demanded, the April article was a disingenuous subterfuge which made an unimportant correction but left the main accusation unaltered, they were, it seems to us, justified in reaching the conclusion that the April article was not calculated to diminish the injury. In any view, therefore, the effect of the answer was inconsequential and negligible if the jury found, as they must have done, that instead of a recantation the defendant, after three months of investigation and reflection published a reiteration of the charge of criminal wrong doing. In such circumstances it is hardly possible that the plaintiff's state of mind could have remained unchanged, surely the April publication

could not have made him feel better and when he testified "I felt worse" he was stating a conclusion which, on the assumption that he was innocent of the charge of rebating, was inevitable.

That evidence of mental suffering is admissible in actions of this character has frequently been upheld by the courts. In the case of Chesley v. Thompson, 137 Mass. 136, the Supreme Court of Massachusetts says:

"In all cases in which the plaintiff is entitled to recover damages for mental suffering, evidence of the actual suffering caused by the act of the defendant is admissible; and, since parties have been admitted as witnesses, the testimony of the plaintiff as to his sufferings is admissible, for he knows best what he has suffered. His interest in the action only affects his credibility. Damages for mental suffering naturally resulting from the publication of the slander are not special damages which must be specifically alleged in the declaration." See, also, 25 Cyc. pp. 533, 534.

That the general objection interposed to the question above quoted is insufficient to sustain the specific objections which are now urged is established so far as this court is concerned by Sigafus v. Porter, 84 Fed. 430, 28 C. C. A. 443. But assuming all for which the defendant contends, any misapprehension in the minds of the jury was set at rest by the clear and explicit statement of the court to the jury that they could not "allow any damages for the publication of the April article or anything therein contained."

It is contended that the court erred in sustaining the objection to questions asked the plaintiff on cross-examination relating to rebates received by him as traffic manager of the Schlitz Brewing Company. The defendant charged the plaintiff with having received rebates under the name of commissions from December, 1902, to June, 1903. The testimony excluded related to transactions in 1892–1894, ten years before the date of the charge in defendant's article, occurring under different conditions and prior to the Elkins act of February, 1903 (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880]). We think this ruling was correct under the authority of Sun Co. v. Schenck, 98 Fed. 925, 929, 40 C. C. A. 163, and cases there cited. The question did not relate to rebates received by the plaintiff but by the Schiltz Brewing Company, while he was traffic manager, and at a time long prior to the passage of the law which set at rest many doubts which had before existed as to the criminality of such payments. The admission of the testimony, even though the question were answered in the affirmative, would have added no relevant fact and would have tended only to confuse still further a controversy already sufficiently complicated.

The court, after stating that between the January and April articles, Mr Baker, the defendant's editor, who wrote them, was informed of the complete falsehood in every material detail of the accusations made in the January article, charged the jury as follows:

"By the time he [Mr. Baker] interviewed Mr. Philipp the decision of the Circuit Court of the United States in vindication of the position asserted by Mr. Philipp was a matter of public record, being reported in the usual manner under date of December 28, 1905."

It will be observed that the court does not say that Baker knew of this decision or that he was informed of it, but simply that such a de-

cision had been rendered. This was true. United States v. Milwaukee Ref. Transit Co. (C. C.) 142 Fed. 247. Whether this decision, being on demurrer, is correctly characterized as "in vindication of the position asserted by Mr. Philipp" is a question depending upon a variety of disputed facts and complicated propositions which it is unnecessary to decide for we are convinced that even if the characterization were incorrect the mistake in no way injured the defendant. The court was endeavoring to impress upon the jury that before he wrote the April article Mr. Baker knew, or could have known, all of the facts relating to the falsity and injustice of his charges in the January article. The fact that the United States had brought an action against the Milwaukee Company had been called to his attention and, had he shown the slightest interest in that litigation, he would have discovered by an examination of the decision, at least, the fact that defendants had interposed a demurrer which had been overruled after an elaborate discussion of the law, by the court. The court continued its charge as follows:

"Having been told of these things or having an opportunity to discover these things, and fully recognizing the admitted inaccuracy of the statements originally made by Thomas, both orally and in writing, Mr. Baker wrote and the defendant published the April article."

The mistake, assuming it to be one, in describing the decision of the Circuit Court was innocuous. The point which the court was endeavoring to make was that the defendant's editor, knowing of a litigation which might throw light on the question between him and the plaintiff had not taken the trouble to examine the opinion rendered in that litigation. But, irrespective of the character of the decision, the question whether the defendant's editor should have examined it seems quite inconsequential in view of what he concededly knew. The libelous article was based almost wholly upon a letter written by Railroad Commissioner Thomas to Gov. La Follette. On January 10, 1906, Thomas and his two accountants, Gilman and Mason, acknowledged over their own signatures as follows:

"We are now satisfied that neither the Union Refrigerator Transit Company, the Northern Refrigerator Transit Company, nor E. L. Philipp was interested in the commissions paid, as shown by the copies of vouchers enclosed herewith to 'the Pabst Refrigerator Line.' * * * Nothing in the investigation indicates or discloses that Mr. Philipp or the Union Refrigerator Transit Company of Kentucky, of which he was president at the time, or the Union Refrigerator Company of Wisconsin, of which he is now president, ever received any commissions, rebates or refunds of any kind."

All this being true, how could Mr. Baker's knowledge or ignorance of the court's decision exercise a controlling influence over the defendant's duty to publish a fair retraction? Knowing, as it did, that the official who originated the charge had made a full retraction, the jury must have considered the defendant's action in the light of that knowledge. It is inconceivable that they could have been influenced by anything said by the court upon a collateral and wholly different issue, pending between other parties. The admission, by the man who originated it, that the charge against the plaintiff was false made it unnecessary to examine the previous opinions of others, whether courts or individuals, in considering the duty of the defendant in the premises.

The defendant devotes nine pages of its brief to a consideration of the proposition that it was error for the court to instruct the jury as to the effect and meaning of the word "graft," it being contended that it should have been left to the jury to say what was its real meaning. We confess our inability to appreciate this contention. In our judgment no man of mature age and ordinary intelligence who has lived in this country for the past ten years could have a moment's doubt as to the meaning of the word "graft" when applied to one who is charged with receiving unlawful compensation from a railroad corporation. In an article which deals with "criminal cash rebates" and unlawful emoluments the inference would be somewhat forced that the writer intended to refer to the recipient of "private graft" as one who had received "large compensation" or "unusual gains." The article was not meant to convey any such impression; it was intended to convince its readers that another dishonest official had been discovered who was enriching himself by practices, which were not only immoral but forbidden by law.

It would extend this opinion unduly were we to attempt a discussion of the 27 assignments of error referred to in the defendant's brief. We have considered those which we deem most important and think that none of the others discloses reversible error. It is impossible that an action like the present, which was fiercely contested for five or six days, can be tried without some ruling being made which would not have been made if the court had been aware at time of its full significance. But unless these mistakes are prejudicial a just result should not be disturbed. The endeavor of all courts should be to reach a correct conclusion as expeditiously as possible and, after a careful examination of the record, we are convinced that this has been done in the present case.

The judgment is affirmed with costs.