INTERNATIONAL TEXT-BOOK CO. v. LEADER PRINTING CO.

SAME v. HEISLER.

(Circuit Court, N. D. Ohio, W. D. November 5, 1910.)

Nos. 2,040, 2,041.

1. LIBEL AND SLANDER (§ 82*)—NEWSPAPER ARTICLE—APPLICATION TO PLAINTIFF.

Defendants wrote and published a newspaper article attacking correspondence schools of education, headed with the word "graft," and charging that the contracts required by concerns engaged in such business were one-sided, harsh affairs, which no business man would care to sign, and that the victims were unfortunately boys and young men in the most straightened circumstances, who were forced because of hardships of the contract to break it, and then in their inexperience were quite readily frightened by a petty lawyer who could be hired for such work. The article contained instances of such defaults, etc., and concluded with the question as to the legality of the use of the mails to coerce an inexperienced victim with the threat to sue under such a contract to get his money for a value never received. *Held* that, since the article referred to a class and not to a particular individual or concern, a petition, charging that the article was libelous as to plaintiff, must allege that it was intended to apply to plaintiff and was so understood in the community where it was published.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 187–197; Dec. Dig. § 82.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. LIBEL AND SLANDER (§ 9*)—BUSINESS LIBEL—WORDS LIBELOUS PER SE—SPECIAL DAMAGES.**

Where a libel contains an imputation on an individual or corporation in respect to its business, it is libelous per se and sufficient to sustain an action without allegation or proof of special damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 80-90; Dec. Dig. § 9.*]

**3. LIBEL AND SLANDER (§ 123*)—WORDS LIBELOUS PER SE—"GRAFT."**

Where an alleged libelous article attacking correspondence schools of education was headed with the word "graft" and attacked the contracts and mode of doing business by such schools as unjust, harsh, etc., whether the term "graft" was used in its most reflective sense as involving wrongdoing and illegality, or in its nonobjectionable sense as a "soft snap," was for the jury.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 123.*]

**4. LIBEL AND SLANDER (§ 21*)—NEWSPAPER PUBLICATION—CLASS OF INDIVIDUALS.**

Under Rev. St. Ohio 1908, § 5093, providing that, in an action for libel or slander, it shall be sufficient to state generally that the defamatory matter was published or spoken of the plaintiff, where an alleged libelous article was an attack on a class of persons and corporations engaged in correspondence school education, the fact that it did not expressly refer to plaintiff, a member of that class, did not render it the less libelous where it was intentionally directed at plaintiff and was so commonly understood in the community.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 103; Dec. Dig. § 21.*]

At Law. Actions by the International Text-Book Company against the Leader Printing Company and against Charles B. Heisler. On demurrer to petitions. Overruled.

David C. Harrington and C. O. Richey, for plaintiff.
Hoskins & Smith, for defendants.

KILLITS, District Judge. These cases count upon the same publication; one being against the publisher of the newspaper containing the alleged libel, and the other being against the assumed author of the article.

The matter is before the court upon a demurrer to the second amended petition, the grounds of the demurrer being that the second amended petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, and, secondly, that this action was not brought within the time limited for the commencement of such actions as fixed by the statutes of the state of Ohio.

A demurrer for these same reasons was interposed to the first amended petition and overruled as to the second ground and sustained as to the first ground. The situation has not changed with regard to the second ground since the action of the court upon the first amended petition; wherefore, the demurrer will be overruled as to the second ground.

The first ground, as stated, is comprehensive enough to raise the question whether the article published in the "St. Mary's Leader," and alleged to have been written by the defendant Heisler, in the case of

the plaintiff against him, was libelous per se, and, if so, whether the second amended petition sufficiently connects the libel with the plaintiff company. The demurrer to the amended petition was sustained on this ground, the judge then sitting noting on the back of the demurrer an opinion that the article upon which the libel is predicated did not seem to be libelous.

[1] Comparing the amended petition with the second amended petition now before us, this court is of the opinion that, as the article was pleaded in the first amended petition, it was not libelous at the suit of the plaintiff, for want of an allegation therein (which has been supplied in the second amended petition) alleging that the reflections in the article, which were therein apparently directed at a class rather than an individual member of the class, were intended to apply to the plaintiff and were so understood in the community in which the article was published. The plaintiff now alleges this fact very clearly, and, as the pleading now stands, the court is of opinion that the demurrer on the first ground should be overruled also.

The article is headed with the word "GRAFT" in large type, followed by a question mark; contains reflections upon the character of the contract for instruction by correspondence which is being advertised and exploited in the community, depicting the contract as a one-sided and harsh affair which "no sane business man would care to sign," states that its victims are "unfortunately our best boys and young men in the most straightened circumstances," who are forced, because of the hardships of the contract, to break it, and then "in their inexperience are quite readily frightened by a petty lawyer who can be hired for such work."

The article contains instances of the default of young men upon this contract and of the harsh efforts of the other party thereto, the correspondence school, to enforce its terms, and, in general, belittles the character of the service performed under the contract for which a large charge is made, and concludes with the question:

"Is it a legal use of the mails to coerce an inexperienced victim with the threat to sue under such a contract for the purpose of getting his money for a value never received?"

In the body of the article is quoted what is alleged to be an actual letter sent by "a little lawyer * * * located at Lima," threatening the commencement of legal action against the recipient to enforce the payment of the entire balance due upon the contract, and the question is asked whether "every line of this proposition does not spell 'graft' in big letters," and the question is raised whether any person but an inexperienced youth or woman would sign such a contract as that put out by the institution under attack.

[2] No special damages are alleged, but the law seems to be well settled that, where a libel contains an imputation upon an individual or a corporation in respect to its business, the same becomes libelous per se, and in an action thereon it is not necessary to allege special damages. Among many cases on this subject we cite only Ohio & Mississippi Ry. Co. v. Press Publishing Co. (C. C.) 48 Fed. 206; Victor Safe & Lock Co. v. Deright, 147 Fed. 211, 77 C. C. A. 437; Stern-

Derg Mfg. Co. v. Miller, etc., Mfg. Co., 170 Fed. 298, 95 C. C. A. 494. That the natural effect of this article, if it is understood in the community to apply to the contracts put out by the plaintiff, would be to prejudice the community against the plaintiff's method of doing business, and thereby cripple its opportunities to do business, seems very clear, and this is the test in this class of libels to determine whether the publication is libelous per se.

[3] Counsel for the plaintiff found in the use of the word "graft" alone actionable libel, and the innuendo pleaded was solely based on the use of that term. We are not willing to concede that it is libelous to use that term alone, for the word has several meanings in common use. Colloquially and politically we understand it to involve wrongdoing and illegality, but it has another use very common, so common as to be recognized by the latest edition of Webster's New International Dictionary, that does not involve the idea of wrongdoing at all, but which may be only defined by the terms of the language with which it is used, for a "graft" as thus used may be defined as a "soft snap." But as the court says in McClure Co. v. Philipp, 170 Fed. 910, 96 C. C. A. 86, the word "graft" may have a sinister meaning when taken in connection with other criticisms of the acts of the party attacked set forth in the article under consideration, and it is in connection with acts of the plaintiff which the writer of the article deems impositions upon susceptible and ignorant people that this term is used. At any rate, as the term is used in this article, it would be for the jury to say whether it was intended to be used in its most reflective sense.

[4] Counsel for the defendant, in urging the demurrer, was not disposed to take issue with the proposition that this article was generally libelous per se, but founded his argument mainly upon the proposition that, because the plaintiff was not directly referred to in the article, it was an attack upon the class of correspondence schools and, consequently, not actionable, citing Watson v. Detroit Journal Co., 143 Mich. 430, 107 N. W. 81, 5 L. R. A. (N. S.) 480. The editor of the L. R. A., in annotating this case, while not at all attacking the principle that a libel cannot be predicated by one of a class upon a publication referring generally to concerns in business of that class, yet very justly, it seems to us, questions the application of that principle to the facts of the case itself, and very clearly, it seems to us, in the note to the case, shows how it may not be an authority for a case such as we have at bar. The note says:

"Upon principle * * * there is no reason why it should not * * * be for the jury to determine whether or not a publication which in its terms refers to a class or collection of individuals or to their business can be fairly construed to mean one or more particular individuals of the class referred to"—citing authorities.

As we have seen in the case before us, the present pleading distinctly avers that this article was intentionally directed at the plaintiff, and was so commonly understood in the community.

Counsel are also referred to Mauk v. Brundage, 68 Ohio St. 89, 67 N. E. 152, 62 L. R. A. 477.

Section 5093 of the Revised Statutes of Ohio of 1908 (section 11,341, General Code) provides:

"In an action for a libel or slander it shall be sufficient to state generally that the defamatory matter was published or spoken of the plaintiff."

The second amended petition is, therefore, sufficient under the Ohio practice, which, of course, governs in this instance.