## AUSTRO-AMERICAN S. S. CO. v. THOMAS.

(Circuit Court of Appeals, Second Circuit.   December 11, 1917.)

### No. 53.

1. CARRIERS ⊂⟹247(1)—BREACH OF CONTRACT WITH PASSENGER—NATURE OF WRONG.

    Though the relation between a passenger and carrier is contractual in origin and nature, the act that breaks the contract may be also a tort.

2. CARRIERS ⊂⟹280(1)—INJURY TO PASSENGERS—NECESSITY OF.

    A passenger cannot look to his carrier as an insurer, and some negligence, however slight, must appear.

3. CARRIERS ⊂⟹283(4)—INJURY TO PASSENGERS—ACTS OF EMPLOYÉS.

    A carrier's duty to a passenger includes protection from the personal misconduct of its servants, and such protection may fail when employés offer insulting and injurious language to a passenger.

4. CARRIERS ⊂⟹283(2)—PASSENGERS—THREAT OF EJECTION—RIGHT OF ACTION.

    Where a steamship company had accepted a passenger's check, it was a breach of contract and a tort, giving a right of action, for its agent in the presence of third persons to falsely notify her that the check was worthless and demand payment under threat of ejection, though the language used was not insulting and she was not ejected.

5. DAMAGES ⊂⟹53—THREAT OF EJECTION OF PASSENGER—MENTAL SUFFERING.

    As mental distress and suffering would result from such act in the case of a normal person, the passenger's mental suffering proximately resulted from the legal wrong, and was an element of damage.

6. CARRIERS ⊂⟹317(1)—ACTIONS FOR DAMAGE—EVIDENCE.

    The episode having occurred in an Italian port, it was error to admit an Italian statute making it a crime to attribute to another an act exposing him to public scorn, and to make such accusation known to third persons; this merely tending to inflame the minds of the jury.

⊂⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. APPEAL AND ERROR ☜1026, 1027—HARMLESS ERROR—ERRORS NOT AFFECT-
ING RESULT.

To render error harmless, it must appear beyond doubt that it did not
and could not prejudice the rights of the complaining party; but, if it
could make no difference in the judgment, it may be disregarded.

8. APPEAL AND ERROR ☜1052(5)—HARMLESS ERROR—CURE BY REMITTITUR.

In an action against a steamship company for threatening a passenger
with ejection and wrongfully asserting that a check received from her was
worthless, the erroneous admission of an Italian statute suggesting to the
jury that a crime was committed was cured by requiring the verdict for
$3,100 to be reduced to $750.

9. CARRIERS ☜317(1)—ACTION FOR DAMAGES—EVIDENCE—"NERVOUSNESS"—
"HEADACHE."

Evidence that, after the episode, plaintiff cried, was nervous, and had
a headache, was admissible; the words "nervousness" and "headache"
being no more than the translation into common speech of emotional ex-
citation.

[Ed. Note.—For other definitions, see Words and Phrases, Headache;
Second Series, Nervous.]


In Error to the District Court of the United States for the Eastern
District of New York.

Action by Marie Louise Thomas against the Austro-American
Steamship Company. Judgment for plaintiff, and defendant brings
error. Affirmed.

In 1914, the Steamship Company maintained a line between Trieste and
New York. The plaintiff below, Mrs. Thomas, obtained in Italy, passage
tickets for herself and daughter entirling them to transportation from Trieste
to New York. In payment therefor she gave her own check upon a bank in
the state of Ohio, which the agent of the steamship company accepted. Plain-
tiff and her daughter then embarked at Trieste by virtue of the tickets so
obtained. Some days later, and when lying in the harbor of Palermo, the pur-
ser notified Mrs. Thomas that her check was worthless, and that she must
forthwith pay the passage money for herself and daughter, or be ejected from
the vessel. This demand was made in the presence of several people, including
especially at least one fellow passenger. As a matter of fact Mrs. Thomas's
check was good, and was paid in due course; the purser's demand was the
result of false information. The fellow passenger, who undoubtedly wit-
nessed this transaction, tendered his own check to the purser if the Thomases
were permitted to remain on board. This offer was accepted, and the voyage
completed without further incident. No force was used nor threatened, though
the plain implication was that, if Mrs. Thomas did not leave the ship quietly,
she would be forcibly removed.

The complaint set forth these facts, and further averred that, when de-
fendant threatened plaintiff "with expulsion from [its vessel]," it did so in an
"insulting and insolent manner," and "without any just cause or provocation."
At the trial defendant substantially admitted that the purser's demand and
threat were the result of the foolish and inexplicable mistake of his informant;
but it appeared that no insult or insolence occurred, other than such as
necessarily inhered in a demand of such a nature. Over objection and ex-
ception, plaintiff was permitted to read in evidence a section of the Italian
Criminal Code declaring, in substance, that any one who attributed to
another an act exposing such other to public scorn, and made such accusation
known to third persons, was guilty of a crime entailing severe punishment.
Over similar objection and exception Mrs. Thomas was permitted to testify
that after her interview with the purser she cried all night, and had "very
bad headaches," and was extremely nervous during the balance of the voyage
and for some weeks afterward.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The jury rendered a verdict in favor of the plaintiff for $3,100, whereupon the court ordered a new trial, unless plaintiff reduced the verdict to $750. Such reduction was consented to, judgment was entered on the reduced verdict, and defendant took this writ, alleging for error in substance: (a) The evidence furnished no basis for assessment of any damages; (b) the above referred to section of the Italian Criminal Code was incompetent; and (c) so was plaintiff's testimony as to her own nervousness and headaches.

James A. Beha, of New York City, for plaintiff in error.

Graves, Miles & Yawger, of New York City (Charles S. Yawger, of New York City, of counsel), for defendant in error.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1-3] Undoubtedly the relation between the passenger and carrier is contractual, both in origin and nature; yet the act that breaks the contract may be also a tort, just as a carrier's unexcused failure to deliver goods intrusted to him is at once a breach and a conversion. Vanderbilt v. Ocean S. S. Co., 215 Fed. at 891, 132 C. C. A. 226. Yet a passenger cannot, like a cargo owner, look to his carrier as an insurer; some negligence, however slight, must be shown. New York, etc., Co. v. Baker, 98 Fed. 697, 39 C. C. A. 237, 50 L. R. A. 201, and cases cited. The carrier's duty, however, not only extends to matters immediately concerned with the act of transportation, but includes protection from the personal misconduct of the carrier's servants (Steamboat Co. v. Brockett, 121 U. S. 645, 7 Sup. Ct. 1039, 30 L. Ed. 1049), and such protection may fail when employés offer insulting and injurious language to a passenger; i. e. one having legal right to the care aforesaid (Gillespie v. Brooklyn, etc., Co., 178 N. Y. 348, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503).

[4, 5] That within these principles Mrs. Thomas had a cause of action is, we think, certain. It is admitted that if, under the circumstances shown, she had been actually ejected from the vessel, she could have recovered, even though she had physically and forcibly resisted (Erie R. R. v. Winter, 143 U. S. 73, 12 Sup. Ct. 356, 36 L. Ed. 71); and the action would have also lain, had she left the ship when ordered, without any resistance or suggestion thereof (Georgia, etc., Co. v. Eskew, 86 Ga. 641, 12 S. E. 1061, 22 Am. St. Rep. 490). The mere leaving the vehicle of transport is nothing; it is the cause or reason for departure that displays, defines, and indeed constitutes, the cause of action. That the actual going was avoided is of itself unimportant. In this instance it was the order to go ashore, unless an unlawful demand was complied with, that constituted a breach of contract; and the demand by its nature was a tort of the same kind as that so exhaustively considered in the Gillespie Case. Except as to amount of damages, it makes no difference, that (as we assume) there was no verbal insult or language of contumely on the purser's part. To be wrongfully accused of passing a worthless check is in and of itself an insult, and to offer that insult in the presence of others is a notorious aggravation thereof. No softness of speech or verbal politeness

can take away or materially lessen the inherently insulting and injurious nature of the accusation.

The contention of plaintiff in error really comes to the assertion that, because Mrs. Thomas suffered no physical injury, her claim is injuria sine damno. We have not here to deal with the long-vexed question as to whether mere mental suffering, resulting from the non-malicious act of one owing no special duty to the sufferer, can either furnish basis for suit or justify an award of damages. There was here an infraction of contractual obligation, which was also a tort; that mental distress and suffering would result therefrom in the case of a normal person we hold too plain for argument; therefore mental suffering proximately resulted from a legal wrong, and consequently is an element of damage. Sanderson v. Northern Pacific R. R., 88 Minn. 162, 92 N. W. 542, 60 L. R. A. 403, 97 Am. St. Rep. 509, and citations there made. Cf. The Willamette Valley (D. C.) 71 Fed. 712, and the rule in slander, Lombard v. Lennox, 155 Mass. 70, 28 N. E. 1125, 31 Am. St. Rep. 528, and in libel, McClure Co. v. Philipp, 170 Fed. 910, 96 C. C. A. 86.

[6] The section of the Italian Criminal Code was erroneously received in evidence. It did not furnish, nor tend to prove, the cause of action; if no such statute had existed, the suit would have been perfectly well brought. It did tend to inflame the minds of the jury, by suggesting that plaintiff had been wronged through the commission of a crime—a word often of dread, and therefore of influence. The suggestion was illegitimate, for there could be no crime without criminal intent (that being the law of Italy for all we know from this record), and that the whole transaction was no more than a silly, though painful, mistake is especially clear.

[7] To render error harmless, it must appear beyond doubt that it did not and could not prejudice the rights of the party complaining thereof (Vicksburg, etc., R. R. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299, and cases cited); if it could have made no difference in the judgment it may be disregarded (Reed v. Stapp, 52 Fed. 641, 3 C. C. A. 244).

[8] If this verdict had been originally for $750, after careful instructions from the court that compensatory damages only could be awarded, we should hold, as of course, that so moderate a verdict was necessarily uninfluenced by testimony that could affect the quantum of recovery only. No right of defendant could have been prejudiced by a fact so obviously disregarded. But it is insisted that, as the facts are, this is to approve a verdict (which alone supports the judgment) made, not by the jury, but by the court, with the assent of plaintiff alone, for which doctrine we are referred to North Chicago, etc., Co. v. Hoffart, 82 Ill. App. 539. This is too technical; our writ of error inquires whether the judgment is right; often, but not always, that means was it reached by lawful methods? But if the judgment, from all the facts shown, could and should beyond all doubt have been absolutely the same, had no error been committed, such judgment cannot be reversed without making fetishes of the rules of the game.

It is further urged that this involves a holding that the court may

fix a verdict; after verdict the trial judge may do so in result, by declaring a new trial unless the victorious party accept what the court deems a fair award. We have no power to directly review that proceeding; yet the plaintiff in error here, having been relieved of a verdict confidently asserted to have been the gift of passion, denies that by a remittitur the result of that passion can be eliminated. The point lacks binding authority, and our holding is that we may and must regard this judgment as if based on a verdict for $750. So regarded, we deem it clear beyond doubt that the evidence erroneously admitted could not possibly have affected the matter. Therefore it was harmless error to admit the same.

[9] It was not error to permit plaintiff to testify that after the episode of insult she cried, was nervous, and had headache. The boundaries between mental and physical suffering are but ill defined. Emotional exhaustion is the natural concomitant of excitement of any kind, and we regard the words "nervousness" and "headache" as no more than the translation into common speech of emotional excitation. The line between a statement of feeling and a claim of disease or injury can better be illustrated than defined. The plaintiff could not properly have deposed that she had neuritis after the threat of ejection, without proper pleading and medical evidence.

The subject is one which in its minute variations must always be left to fair discretion in the trial court. That discretion was not abused in this instance.

Judgment affirmed.


LEARNED HAND, District Judge. I concur in the result, but not upon the ground that the reduction of the verdict by the court could cure the error in the admission of section 393 of the Italian Code. The defendant was entitled to an assessment by the jury after a legal trial. The plaintiff might consent to abate the verdict; but he might not take from the defendant the right to some verdict. I agree that the evidence was irrelevant, and that it was error to admit it; but it seems to me that the judge's charge, although not expressly directed to that point, was sufficient to undo its evil. The court first said that there was no charge that the defendant had acted maliciously, but at most only negligently, and then said that the jury could award nothing but compensatory damages, which it defined as those to reimburse the plaintiff for the actual injury she had sustained. The defendant made no request for a further charge in respect of the evidence in question. The evidence was not of such kind as inevitably to involve a mistrial, no matter what action the judge took. It seems to me a fair exercise of his discretion in correcting the error not to emphasize the evidence by an express withdrawal, certainly unless the defendant required it.

Now, it is true that Washington Gaslight Co. v. Lansden, 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543, does appear to be a decision to the contrary, and pretty close to the case at bar. Yet that case was a good deal complicated by the fact that the testimony there admitted was not relevant against the defendant Lectch at all, although he was

necessarily involved in the verdict, and besides I think the evidence of the defendant's wealth was a good deal more dangerous than the evidence here. The act could not be the crime of the defendant, but only of the purser, and it does not seem to me inevitable that a crime of the purser should have been attributed to the defendant. I think no one would have been for reversal if the evidence had been expressly withdrawn, and I confess that the difference between that course and the charge as given appears to me too technical to justify a reversal under the more modern treatment of such matters.