## E. I. DU PONT DE NEMOURS & CO. v. NASHVILLE BANNER PUB. CO.

(Circuit Court of Appeals, Sixth Circuit. April 17, 1926.)

No. 4452.

1. Libel and slander ⊂∞89(1)—Corporation may recover for libel per se, without alleging special damage, if defamatory article tends to injure it in trade or business.

Corporation may recover for publication libelous per se, without alleging special damage, if defamatory article tends to injure it in its trade or business.

2. Libel and slander ⊂∞123(2)—Whether publication sufficiently connected, or would reasonably be understood by readers to connect, plaintiff corporation with defamatory charges of unloading of surplus stock of another corporation on government at exorbitant price, held for jury.

In corporation's suit for libel in newspaper article, charging unloading of surplus stock of another corporation on government at exorbitant price, references to allied concerns and plants, to officer formerly connected with plaintiff, and to cars that left plaintiff's plant, coupled with similarity of plaintiff's corporate name to that of such other corporation, held to warrant submission to jury of question whether publication sufficiently connected, or would reasonably be understood by readers to connect, plaintiff with defamatory charges, without further averment that it was or was understood to be allied concern of such other corporation.

3. Libel and slander ⊂∞15—Newspaper article, reasonably warranting inference that plaintiff corporation conspired with another corporation to unload latter's surplus stock on government at exorbitant price, held libelous per se.

Newspaper article, reasonably warranting inference by public that plaintiff corporation conspired with another corporation to unload latter's surplus stock of antiquated and non-usable material on government at exorbitant price, held libelous per se as against both corporations.

In Error to the District Court of the United States for the Middle District of Tennessee; John J. Gore, Judge.

Action by E. I. Du Pont de Nemours & Co. against the Nashville Banner Publishing Company. Judgment of dismissal, and plaintiff brings error. Reversed and remanded, with directions.

W. S. Gregg, of Wilmington, Del., and Thos. J. Tyne, of Nashville, Tenn. (J. M. Peebles, Douglas Henry, and Thos. J. Tyne, Jr., all of Nashville, Tenn., on the brief), for plaintiff in error.

Edwin A. Price, of Nashville, Tenn. (Thos. W. Schlater, Jr., of Nashville, Tenn., on the brief), for defendant in error.

Before DONAHUE, MACK, and MOORMAN, Circuit Judges.

MACK, Circuit Judge. The District Court sustained the demurrer of a Tennessee corporation to a declaration in libel filed by a Delaware corporation, on three out of six specified grounds, to wit: (1) That the declaration did not state a cause of action; (2) that the publication complained of was not libelous per se, and therefore not actionable without the averment of special damages; and (3) that the publication complained of was with reference to a special contract between the Dupont Engineering Company and the United States government to build a powder plant at Old Hickory, Tenn., with which contract it was not stated in the publication complained of, or averred in the declaration, that the plaintiff in error was in any way interested or connected. The essential parts of the publication are appended hereto.

[1] As the validity of the first ground of the demurrer obviously rests upon that of the other two, we pass at once to a consideration of each of them. Though no detailed opinion was handed down, it is evident that the second ground of demurrer was sustained solely because the defamatory portions of the publication were believed not to be connected with or linked to the plaintiff, inasmuch as

in the companion case of Dupont Engineering Co. v. Nashville Banner Publishing Co., 13 F.(2d) 186, the District Court held the identical publication libelous per se as to that plaintiff. The law is clearly settled that a corporation may recover for a publication libelous per se, without alleging special damage, if the defamatory article tends to injure it in its trade or business. Security Benefit Association v. Daily News Publishing Co. (C. C. A.) 299 F. 445, and cases cited therein; International Text-Book Co. v. Leader Printing Co. (C. C.) 189 F. 86. In our judgment the publication complained of contains defamatory statements calculated to injure the trade or business reputation of those persons and corporations alleged to have been guilty of the acts described. As against them the publication must be regarded as libelous per se.

[2] The real question in this case, therefore, is whether or not the publication complained of connects, or would reasonably be understood by the readers to connect, the plaintiff with the defamatory charges without further averment that plaintiff was and was understood to be an "allied concern" of the Dupont Engineering Company. Perhaps no single reference in the article would suffice; but, taken as a whole, it does, in our judgment lead clearly to that inference. The reference to "allied concerns," then to the officer "formerly connected with" plaintiff, again to "allied plants," and finally to the cars that left plaintiff's plant, coupled with the similarity of plaintiff's corporate name to that of the Dupont Engineering Company, the alleged principal participant, could reasonably lead the ordinary reader to conclude that plaintiff was one of the "allied concerns" referred to. True, by nice analysis the inference may be explained away; that, however, is not the criterion; that imaginary creature, the average reader, may well be justified in giving it the interpretation stated. In any event, inasmuch as in our judgment it is on its face capable of such an interpretation, defendant could not complain if the final determination thereof were submitted to a jury.

[3] If, as the District Judge stated in his opinion overruling the demurrer in the companion case, the fair inference would be that plaintiff had entered into a conspiracy with E. I. Du Pont de Nemours & Co., whereby the latter had unloaded its surplus stock of antiquated and nonusable material at an exorbitant price, upon the government, or if, indeed, as we hold, such an inference could reasonably be drawn by the public, then the

article was necessarily libelous per se, as well of this plaintiff as of the Dupont Engineering Company.

The judgment dismissing the action must therefore be reversed, and the cause remanded, with directions to overrule the demurrer and to grant leave to plead.

Reversed and remanded.

## Appendix.

(Italics are used, not for emphasis, but to indicate the alleged specific references to plaintiff.)

In black, heavy type, extending entirely across the top of the first page of the defendant's issue of the Nashville Banner on December 16, 1923, were the words "McLane Bares Old Hickory Fraud Charges," and in a subheading, in large type, the words "CLAIMS GOVERNMENT LOST MANY MILLIONS," with a further subheading, "Detailed Figures on Alleged Irregularities Connected with Powder Plant Construction Revealed by District Attorney."

The first paragraph of this article stated:

"Detailed charges of wholesale fraud amounting to between $50,000,000 and $60,000,000 in the erection and operation of the Old Hickory powder plant at Nashville during the war, heretofore only partially touched in hearings on the subject held in Washington, were made public here Saturday by A. V. McLane, United States District Attorney, following close upon his return from the national capital, where he went last week for the fifteenth time in connection with the government's proposed litigation against the Dupont Engineering Company *and allied concerns* which had a part in the construction of the largest smokeless powder plant in the world."

Then followed what purported to be a more detailed report of the charges of fraud:

"According to a report filed with the department of justice by George W. Stork, expert accountant of the department of justice, who has only recently completed an extensive survey of the records at Old Hickory, which covered a period of time extending over several months, the records at Old Hickory had been stored in a building in the old powder arear under orders of Maj. P. J. O'Shaughnessy, formerly connected with *E. I. du Pont de Nemours & Co., Inc.,* but more recently of the ordnance department, United States Army."

"These records had been dumped into tin cans, carried to the temporary storehouse, dumped into rooms without any regard for

system or as to their importance. The building was one of those which was struck by a cyclone which swept through Old Hickory last spring, and part of the building was blown away. Some of the records were scattered to the winds. The roof of the building had been torn away and the records were exposed to the elements for a number of weeks. Other records were found under the flooring of the building, covered with acids.   *   *   *

"The heavy unloading of stocks after the signing of the Armistice is shown in the government report and involving hundreds of thousands of dollars worth of materials said to have been shipped *from allied plants* of the Dupont Engineering Company to the Old Hickory powder plant, *in order to get rid of these materials at the expense of the government.* It is said that carload after carload of various supplies were received at the plant after December 1, 1918, and far into April, 1919. These shipments were all excepted to by the government auditors who have made an examination of the records.   *   *   *

"There were a total of 300,035 complete box shooks, of a value of $297,718.21, shipped to the Old Hickory powder plant. Exceptions were taken on fifteen carloads received at the plant after December 1, 1918, and in addition to these thirty cars left the *E. I. DuPont de Nemours plant* at Wilmington, Del., on November 25, two weeks after the signing of the Armistice, and arrived at the plant after December 1, at a cost of approximately $50,000 exclusive of freight. There were no vouchers in the plant files covering these shipments. *The auditor viewed this as an unloading of surplus stocks onto the Old Hickory plant."*